THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PHILLIP P. RAGUSA, Defendant-Appellant.

Second District    No. 2—02—1131

Opinion filed February 6, 2004.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Timothy J. McCann, State's Attorney, of Yorkville (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert E. Davison, of Springfield, for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Phillip P. Ragusa, appeals his convictions of and sentences for unlawful possession with intent to deliver methylenadioxy-methamphetamine (MDMA) or ecstasy, and cannabis (720 ILCS 570/401(a)(7.5)(A)(ii) (West 2002); 720 ILCS 550/5(d) (West 2002)). We affirm in part, reverse in part, and remand.

The following facts are taken from the record. Defendant was charged with the following six counts: (I) unlawful possession with the intent to deliver more than 15 but less than 200 pills containing the controlled substance MDMA, commonly known as ecstasy (720 ILCS 570/401(a)(7.5)(A)(ii) (West 2002)); (II) unlawful possession of more than 15 but less than 200 pills containing MDMA (720 ILCS 570/402(a)(7.5)(A)(ii) (West 2002)); (III) unlawful possession with the intent to deliver 1 or more, but less than 15 grams of a substance containing cocaine (720 ILCS 570/401(c)(2) (West 2002)); (IV) unlawful possession of less than 15 grams of a substance containing cocaine (720 ILCS 570/402(c) (West 2002)); (V) unlawful possession with the intent to deliver more than 30 grams but not more than 500 grams of a substance containing cannabis (720 ILCS 550/5(d) (West 2002)); and (VI) unlawful possession of more than 30 grams but not more than 500 grams of a substance containing cannabis (720 ILCS 550/4(d) (West 2002)).

Before trial, defendant filed a motion to dismiss counts I and II of the indictment and to declare sections 401(a)(7.5)(A)(ii) and 402(a)(7.5)(A) of the Controlled Substances Act (720 ILCS 570/401(a)(7.5)(A)(ii), 402(a)(7.5)(A) (West 2002)) unconstitutional as violating the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 11. After a hearing on the motion, the

trial court denied defendant's motion and declared the provisions constitutional.

Defendant also filed a motion to suppress statements he made to police while at the police station on the night he was arrested, February 23, 2002. At the hearing on the motion to suppress, Kendall County Cooperative Police Assistance Team (CPAT) officer Christopher Biggs testified that at about 4:40 p.m., he and his fellow CPAT officer Jason Flanders executed a search warrant for defendant and a home in Oswego. Biggs and Flanders encountered defendant in an upstairs bedroom in the Oswego home and took him into custody. Biggs immediately read defendant his *Miranda* rights and defendant indicated that he understood his rights and was willing to waive them. Defendant was taken to the Kendall County police station. In an interview room, Biggs read a preprinted waiver form and defendant initialed each line of the form.

Biggs testified that, before interviewing defendant at the police station, Biggs called and spoke with defendant's uncle, Naperville police officer Dan Ragusa, in defendant's presence. Dan asked to speak with defendant. After getting approval from the State's Attorney's office, Biggs called Dan again and gave the phone to defendant. Biggs and Flanders heard parts of the conversation between defendant and Dan. During the 10-minute phone call, Dan told defendant that the arrest was embarrassing to him and to defendant. Dan told defendant to be polite and cooperative. Defendant gave short one-word answers to Dan.

Biggs stated that he interviewed defendant after the phone call. Defendant spoke about the narcotics found at the Oswego home and "other deliveries or possible cooperation." Biggs told defendant that if defendant "wanted to do some work for us, that would be possible." Biggs wrote in his police report that defendant said he would cooperate if it would reduce his charges. Biggs had permission from an assistant State's Attorney to try to get defendant to work for the police in exchange for reduced charges. Defendant attempted to cooperate with the officers by arranging for purchases from alleged drug dealers. Defendant made phone calls to potential sellers while in the interview room with the officers, but was unsuccessful. Biggs did not make any promises to defendant and defendant never told Biggs that he did not want to give information. The interview ended at about 10 p.m.

Flanders corroborated Biggs's testimony. Flanders added that defendant was not cooperative during the first part of the interview and that Flanders believed that defendant was lying to the officers. However, at some point defendant became more cooperative. Defendant and the officers discussed defendant working off some of his charges.

Defendant was told that he would be given consideration regarding his charges.

Dan Ragusa testified that during his phone call with defendant he advised defendant to tell the truth and told defendant that if he cooperated with the police by making some drug buys for them, the Class X charge might be dropped.

Defendant testified that he did not recall being advised of his *Miranda* rights at the time of his arrest and could not see the faces of the officers who executed the search warrant and took him into custody because they were wearing ski masks. Defendant was taken to the Kendall County jail and handcuffed to a bench until he was taken to a holding cell. He told an officer that he did not "want to talk to the cops."

Defendant also stated that, while in the interview room, Biggs showed defendant the *Miranda* waiver form. Defendant initialed each line of the form but believed that his initials meant that he "could sit there and not have to say anything and, you know, don't have to talk to them." Defendant signed the form at Biggs's request. Defendant believed that, by signing the form, he was indicating that he had received and understood his rights, but not that he was giving them up. Defendant did not understand what the word "waiver" meant and did not ask the officers.

Defendant testified that he then spoke with Dan Ragusa on the phone. Dan told defendant that he was disappointed in defendant and then explained that the officers and Dan were working out a deal so that defendant could work off the charges or "at least reduce them down a little bit." Dan also told defendant that defendant's "best bet would be probably to cooperate with them and try to reduce [his] charges." Defendant respected police officers because his uncle was a police officer with the Naperville police department and his grandfather was a police captain in the Joliet police department.

Defendant stated that, after the phone call with his uncle, he did not cooperate with the police officers. Defendant decided to cooperate only after the officers "kept bringing up the fact that if [he] worked for them it will help [him] out a lot." Defendant trusted the officers because they arranged for him to talk to his uncle. Defendant would not have talked to the officers if they had not suggested that it was possible that the Class X charge could be reduced. Defendant thought about what the officers and his uncle had told him and then decided to cooperate. Until his decision to cooperate, defendant did not say anything to the officers about his ownership of the narcotics found at the Oswego home.

After hearing argument, the trial court granted defendant's mo-

tion to suppress in part and denied it in part. The trial court ruled that "any statements which concerned or involved the defendant working off his criminal charges are suppressed because they involve plea related discussions." However, the trial court ruled that "the remainder of the defendant's statements *** is voluntary and the defendant's motion to suppress is denied."

At the bench trial, the State presented evidence that, on the afternoon of February 23, 2002, several police officers from the Kendall County CPAT executed a search warrant for defendant and a home in Oswego. In an upstairs bedroom, the officers seized a black nylon bag containing 16 plastic bags, a digital scale, and a plastic bag containing cocaine weighing 5.5 grams. On top of a folding table in the bedroom, the officers found and seized .8 grams of cocaine, 54.2 grams of cannabis, and another plastic baggie containing 20 ecstasy pills weighing 4.9 grams in total. The parties stipulated to the weights and identifications of the substances, an unbroken chain of custody, and other foundational requirements.

Officer Biggs testified that he encountered defendant in the upstairs bedroom of the Oswego home and immediately handcuffed defendant and read him his *Miranda* rights. Defendant was taken to the Kendall County correctional facility and interviewed by Biggs from 7:10 to about 10 p.m. Defendant was given a *Miranda* rights form, indicated that he understood his rights, signed the form, and agreed to be interviewed. Defendant told the officers that the 20 ecstasy pills, some of the cocaine, and some of the cannabis found in the Oswego bedroom were supposed to "go" to Ryan Faber. Defendant also told the officers that some of the cocaine was for defendant's use and some of the cannabis was to be sold at Oswego High School. Officer Flanders corroborated Biggs's testimony.

After hearing arguments by counsel, the trial court found defendant guilty of all but one of the six counts brought against him. Defendant was found not guilty of count III, unlawful possession with the intent to deliver cocaine. The trial court merged count II with count I, and count VI with count V. Defendant was sentenced to six years on count I, one year on count IV, and two years on count V, all to be served concurrently. Defendant's motion for a new trial was denied, and defendant filed this timely appeal.

On appeal, defendant argues that his conviction and sentence on count I, unlawful possession with the intent to deliver more than 15 but less than 200 pills containing the controlled substance methylenadioxy-methamphetamine (MDMA), commonly known as ecstasy (720 ILCS 570/401(a)(7.5)(A)(ii) (West 2002)), are unconstitutional because they violate the proportionate penalties clause, the due process clause, and equal protection clause.

The challenged statute provides that a person convicted of possession with intent to deliver 15 to 200 pills or tablets containing ecstasy is guilty of a Class X felony and is to be sentenced to imprisonment for not less than 6 years but no more than 30 years. 720 ILCS 570/401(a)(7.5)(A)(ii), 204(d)(2) (West 2002). In contrast, the statute provides that possession with intent to deliver 4.9 grams of a substance containing ecstasy is a Class 2 felony for which probation is available. 720 ILCS 570/401(d) (West 2002).

Defendant argues that, if he had been charged with and convicted of possession with intent to deliver ecstasy based upon the gram weight of the substance, rather than the number of pills, he would have been sentenced for a Class 2 felony, rather than a Class X felony. 720 ILCS 570/401(c)(7.5), (d) (West 2002). Defendant asserts that possession with intent to deliver a certain number of pills or tablets of ecstasy (such as 20) is no more serious an offense than, and is comparable to, possession with intent to deliver the same weight of ecstasy (such as 4.9 grams) in another form, such as powder.

■ Defendant contends that section 401(a)(7.5)(A)(ii) creates an unreasonable classification violating the equal protection provisions of the United States and the Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. We agree with the parties that, because the classification here does not affect a fundamental right or discriminate against a suspect class, the proper standard for judging the statute is the rational-basis test. See *People v. Bailey*, 167 Ill. 2d 210, 231 (1995). Under this test, we will uphold a classification scheme if any statement of facts may reasonably be conceived that would justify the classification. *People v. Pursley*, 341 Ill. App. 3d 230, 236 (2003). It is required only that the classification bear a rational relationship to a valid legislative purpose. *Pursley*, 341 Ill. App. 3d at 236.

■ Defendant also argues that he was denied his constitutional right to due process, guaranteed by the federal and state constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. Legislation will survive a substantive due process challenge so long as it is reasonably designed to remedy the evils that the legislature has determined to be a threat to the public health, safety, and general welfare. *People v. Grant*, 339 Ill. App. 3d 792, 803 (2003). The standards used to determine the constitutionality of a statute under the due process clause are the same as those used to determine the constitutionality of a statute under the equal protection clause. *People v. Kimbrough*, 163 Ill. 2d 231, 242 (1994). Legislation challenged on due process grounds, like legislation challenged on equal protection grounds, will be upheld if it is rationally related to a legitimate state goal. *Kimbrough*, 163 Ill. 2d at 242.

■ We note that statutes are presumed to be constitutional as written, and the party challenging the constitutionality of a statute bears the burden of rebutting this presumption. *People v. McLaughlin,* 324 Ill. App. 3d 909, 914 (2001). Defendant must negate every conceivable basis that might support the legislation, whether or not the basis has a foundation in the record. *McLaughlin,* 324 Ill. App. 3d at 915. This court has a duty to construe a statute in a manner that upholds its validity and constitutionality if it can reasonably be done. *People v. Malchow,* 193 Ill. 2d 413, 418 (2000). The question of whether a statute is constitutional is subject to *de novo* review. *People v. Carney,* 196 Ill. 2d 518, 526 (2001).

In *Kimbrough,* our supreme court upheld a similar statutory scheme under which possession of LSD in object or carrier form was punished more severely than possession in pure form. Our supreme court held that the scheme was supported by a rational basis and did not violate guarantees of equal protection or due process. *Kimbrough,* 163 Ill. 2d at 242-43. The court reasoned that the legislature could reasonably have determined that LSD reduced to carrier form, in which it is normally used and distributed, is more dangerous to public health and safety than pure liquid LSD, due to the fact that it is much easier to sell, transport, store, and conceal than LSD in liquid form. *Kimbrough,* 163 Ill. 2d at 240.

■ The same reasoning supports the validity of the statutory scheme at issue here. The legislature could have reasonably determined that ecstasy, reduced to tablet or pill form, is more dangerous to the public safety than it is in powdered form. When ecstasy is in pill or tablet form, it is much easier to sell, transport, store, conceal, and use. Defendant's contention that ecstasy could be used in powder form does not render the classification unconstitutional. The documents that defendant submits in his appendix reveal that ecstasy is most commonly distributed in pill or tablet form, and defendant's contention that it could be distributed in other forms does not make the legislature's classification irrational. Given the fact that ecstasy is most commonly distributed in pill or tablet form, "it is not the amount of the drug that becomes important but the ease of distribution." *People v. Sonntag,* 238 Ill. App. 3d 854, 860 (1992). The more pills and tablets there are, the greater the amount that can be sold to users. See *Sonntag,* 238 Ill. App. 3d at 860. Because ecstasy is commonly distributed and used in tablet or pill form, the legislature could reasonably have determined that ecstasy reduced to this form is more dangerous than powder or other forms. Therefore, we believe that there is a rational basis to punish offenders with smaller quantities of ecstasy in pill or tablet form more severely than offenders with greater quanti-

ties in other forms. See *Kimbrough*, 163 Ill. 2d at 239-40. Accordingly, we conclude on the basis of the above that the penalty provisions of section 401(a)(7.5)(A) did not deny defendant his right to due process or equal protection, and we affirm defendant's conviction and sentence for count I, possession with the intent to deliver more than 15 but less than 200 pills containing ecstasy. 720 ILCS 570/401(a)(7.5)(A)(ii) (West 2002).

Defendant argues that ecstasy is different from LSD because once put in its carrier form LSD cannot easily be returned to liquid or pure form. In contrast, once put in tablet or pill form, ecstasy can be crushed into powder form. Defendant fails to recognize that the powder, like the liquid LSD, does not have the same ease of distribution as ecstasy in pill or tablet form or LSD on paper or in a sugar cube. Thus, this argument fails.

Defendant also claims that the legislature gave no thought "to whether the gram-weight provisions correlated with the number-of-pills provision." It is irrelevant for constitutional purposes whether our conceived reason for the challenged distinction actually motivated the legislature. See *McLaughlin*, 324 Ill. App. 3d at 916. If we can conceive of one potential rational basis for the distinction, we must uphold the statute. See *McLaughlin*, 324 Ill. App. 3d at 916.

Defendant further argues that the sentencing provision violates equal protection by granting prosecutors discretion to charge possession of, or possession with intent to deliver, ecstasy either by gram weight or by number of pills or tablets. The identical issue was raised in *Kimbrough*. Our supreme court upheld the LSD statutory provision at issue but limited the prosecutor's discretion. We do the same here and hold that, if the ecstasy is in carrier form (pill or tablet), the accused must be charged pursuant to the statutory provisions pertaining to objects. If the ecstasy is not reduced to carrier form (pill or tablet), the accused must be charged based upon the gram classification. See *Kimbrough*, 163 Ill. 2d at 241.

We next consider defendant's argument that section 401(a)(7.5)(A)(ii) violates the proportionate penalties clause of our state constitution. Ill. Const. 1970, art. I, § 11. Defendant argues that the provision violates the proportionate penalties clause because identical offenses are given different penalties.

■ Article I, section 11, of the Illinois Constitution, commonly referred to as the proportionate penalties clause, provides in relevant part that "[a]ll penalties shall be determined *** according to the seriousness of the offense." Ill. Const. 1970, art. I, § 11. The proportionate penalties clause can be violated in one of three instances, namely, where: (1) the penalty for an offense is cruel, degrading, or so

completely disproportionate to the offense for which it is imposed as to shock the moral sense of the community; (2) the penalty imposed for a given offense is harsher than the penalty for a similar but more serious offense; and (3) the penalties imposed for identical offenses differ. *People v. Davis*, 177 Ill. 2d 495, 503-04 (1997).

In this case, defendant asserts a violation of the third type, namely, that the penalty for possession of, or possession with the intent to deliver, ecstasy in pill or tablet form is harsher than possession of, or possession with intent to deliver, ecstasy in powder form when both have the same gram weight. Under the test for the third type of proportionate penalties violation, the elements of the respective offenses must be identical before the proportionate penalties clause will be implicated. *Davis*, 177 Ill. 2d at 503.

Contrary to defendant's contention, the offenses at issue in this case are not identical. Section 401(a)(7.5)(A)(ii) of the Controlled Substances Act requires the State to prove that a defendant possessed with the intent to deliver 15 to 200 pills or tablets containing ecstasy. 720 ILCS 570/401(a)(7.5)(A)(ii) (West 2002). In contrast, section 401(d) requires the State to prove that a defendant possessed with the intent to deliver less than 5 grams of a substance containing ecstasy. 720 ILCS 570/401(d) (West 2002).

Before comparing these two provisions, it is important to note again that we have limited the State's discretion by providing that, if the substance containing ecstasy is not reduced to carrier form (pill or tablet), the accused must be charged based upon the gram classification.

Comparing the two offenses, although both require proof of possession with the intent to deliver a substance containing ecstasy, the former requires proof that the ecstasy was contained in pill or tablet form while the latter requires proof that the ecstasy was contained in a powdered form. With the newly announced limitation, these are not identical offenses. For example, if the State proves that a defendant possessed with the intent to deliver less than 5 grams of a substance containing ecstasy in a powdered form, but does not prove that the ecstasy was contained in tablet or pill form, then that defendant could be convicted of possession with intent to deliver under section 401(d), but could not be convicted of possession with intent to deliver under section 401(a)(7.5)(A)(ii). These two sections target distinct conduct in that ecstasy in pill or tablet form is more easily distributed than ecstasy in powdered form. Consequently, the sentences for those offenses do not violate the proportionate penalties clause. See *People v. Graves*, 207 Ill. 2d 478, 485 (2003).

Next, defendant argues that the trial court erred by failing to sup-

press all of the statements he made to officers during an interview the night of his arrest. Defendant asserts that the statements were involuntary. Defendant urges this court to grant a new trial on counts I and V, possession of MDMA and cannabis with intent to deliver, because the State based its case for these two counts on defendant's statements. More specifically, defendant argues that the statements were inadmissible because they were part of a plea-related discussion and such evidence must be barred in accordance with Supreme Court Rule 402(f) (177 Ill. 2d R. 402(f)) and the trial court's order suppressing such statements.

After the hearing on defendant's motion to suppress, the trial court ruled that "any statements which concerned or involved the defendant working off his criminal charges are suppressed because they involve plea related discussions." However, the court also ruled that the "remainder of the defendant's statements *** is voluntary and the defendant's motion to dismiss is denied." Defendant argues that the statements relied on by the State to establish intent to deliver MDMA and cannabis should also have been barred as part of the plea-related discussion.

■ Supreme Court Rule 402(f) provides: "If a plea discussion does not result in a plea of guilty, *** neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." 177 Ill. 2d R. 402(f). The purpose of the rule is to encourage plea negotiations by eliminating the risk that the accused will enter plea discussions at his peril. *People v. Friedman*, 79 Ill. 2d 341, 351 (1980). In determining whether a particular statement is plea related, courts must consider (1) whether the accused exhibited a subjective expectation to negotiate a plea, and, if he did, (2) whether his expectation was reasonable under the totality of the circumstances. *Friedman*, 79 Ill. 2d at 351. When a defendant's subjective expectations are not explicit, a court may look to the objective circumstances surrounding the statement to determine whether it was plea related. *Friedman*, 79 Ill. 2d at 353. "Before a discussion can be characterized as plea related, it must contain the rudiments of the negotiation process, *i.e.*, a willingness by defendant to enter a plea of guilty in return for concessions by the State." *Friedman*, 79 Ill. 2d at 353.

■ In this case, the trial court found that statements concerning defendant working off his criminal charges were plea-related discussions. Accordingly, the trial court suppressed such statements. However, during the trial, the trial court erroneously admitted such statements. During the trial, testimony was given that defendant told the officers during his interview at the police station that he intended

to sell the 20 ecstasy pills, some of the cocaine, and some of the cannabis found in the Oswego bedroom to Ryan Faber. Defendant also told the officers that he was going to sell some of the cannabis at Oswego High School. Defendant made these statements after he spoke with his uncle on the phone about cooperating with police and working out a deal to get defendant's charges reduced. Biggs testified that the interview did not begin until after defendant spoke with his uncle, a Naperville police officer. Biggs stated that, after defendant spoke with his uncle, defendant and Biggs discussed "other deliveries or possible cooperation" and defendant made statements regarding the narcotics that were found inside the Oswego home. Defendant then made some calls to alleged drug dealers in the presence of the officers in an attempt to cooperate. Biggs's police report indicates that defendant agreed to cooperate to reduce his charges. Thus, the record indicates that the statements at issue were made during discussions that the trial court found to be plea related. Accordingly, the trial court abused its discretion by admitting this testimony. Because the State presented no other evidence of defendant's intent to deliver the MDMA and cannabis, the error cannot be considered harmless. Thus, we reverse the convictions of counts I and V, possession of MDMA and cannabis with intent to deliver, and we remand for a new trial on these counts.

The State argues that the trial court erred when it found that the statements concerning defendant working off his criminal charges were plea related. However, the State failed to file a certificate of impairment and a timely notice of appeal before challenging the court's order of suppression. See 188 Ill. 2d R. 604(a)(1). Accordingly, the State cannot raise this issue on appeal.

Because we have determined that the trial court erred by admitting defendant's statements regarding his intention to sell the ecstasy and cannabis because they were part of a plea-related discussion, we need not address defendant's argument that these statements should have been suppressed because they were not made voluntarily.

In conclusion, we reverse defendant's convictions of and sentences for counts I and V, unlawful possession with intent to deliver MDMA or ecstasy and cannabis (720 ILCS 570/401(a)(7.5)(A)(ii) (West 2002); 720 ILCS 550/5(d) (West 2002)). We remand for a new trial on counts I and V.

The judgment of the circuit court of Kendall County is affirmed in

188

part and reversed in part, and the cause is remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

HUTCHINSON and GILLERAN JOHNSON, JJ., concur.