FIFTH DIVISION
September 7, 2007

No. 1-06-0038

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 2848 |
| | ) | |
| EUDELTRO GALE, | ) | The Honorable |
| | ) | Dennis J. Porter, |
| Petitioner-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Defendant Eudeltro Gale (defendant) filed a *pro se* postconviction petition from judgment, relating to his conviction for burglary. The trial court summarily dismissed the petition as frivolous and patently without merit. Defendant appeals, contending that the trial court erred in summarily dismissing his petition where he presented the gist of a meritorious constitutional claim focusing on ineffective assistance of trial counsel in relation to counsel's failure to obtain defendant's mental health records. Defendant also contends on appeal that he should not have been assessed certain filing fees because they are not mandated by statute and because they violate his due process and equal protection rights. Defendant asks that we reverse the trial court's summary dismissal of his *pro se* postconviction petition, remand the cause for further proceedings including the appointment of an expert to conduct a fitness examination of him, and vacate the court's order requiring him to pay costs and fees. For the following reasons, we affirm.

No. 1-06-0038

BACKGROUND

The underlying facts of this case have been set forth adequately in the order concerning defendant's direct appeal before this Court. See People v. Gale, No. 1-01-4279 (2003) (unpublished order pursuant to Illinois Supreme Court Rule 23). Accordingly, we state herein only those facts necessary to the disposition of this postconviction appeal.

Defendant was charged with burglary and possession of burglary tools in relation to an incident where a box containing a five-piece luggage set was taken from a railyard on South State Street in Chicago. On the day of his trial, defendant told the court that he was unhappy with his counsel's representation of him and the preparation of his case and did not want to proceed to trial. Defendant's counsel, however, informed the court that he was prepared and described his contact with defendant and the steps he and cocounsel had taken in preparation for trial. The trial court gave defendant the option to represent himself or obtain new counsel by that afternoon. Defendant refused to represent himself and requested a week's continuance to obtain counsel, which he explained his mother was doing for him by attempting to sell a parcel of land in Tennessee in order to finance his defense. However, when asked by the court, defendant did not have the names of any lawyers his mother or anyone had contacted for him, but stated he had this information in his prison cell. The trial court stated that it believed defendant was simply trying to delay trial and denied his motion for continuance.

Following trial testimony, which included that of a security manager from the railyard, two police officers who saw defendant carrying the box from a railcar and pursued him when he fled, and defendant himself, a jury found defendant guilty of burglary. Prior to sentencing, defendant

2

was found eligible for a Treatment Alternative for Safe Communities (TASC) drug program and mental illness and substance abuse placement, but a review of his criminal history was still pending. Later, at his sentencing hearing, the State argued that while defendant had been found eligible for TASC, he was not a good candidate for this in light of his criminal record, which included three adjudications of delinquency for burglary as a juvenile and two convictions for burglary, two for attempted burglary, one for theft, one for unlawful use of a weapon by a felon, and one for possession of cannabis as an adult. Meanwhile, defendant's trial counsel argued in mitigation that defendant had a history of hospitalization for mental illness; defendant's presentence investigation report (PSI) revealed he had been hospitalized three times. Defense counsel also informed the court that defendant had been prescribed drugs for depression, that he had been addicted to drugs and alcohol since he was a child, and that he had been found eligible for TASC. Defense counsel further called defendant's mother to testify at the sentencing hearing regarding defendant's mental illness and drug problem. In light of all this, the trial court sentenced defendant to 16 years' imprisonment, stating that he had "an atrocious criminal record" and that this sentence was necessary for his rehabilitation and the protection of the public.

On direct appeal with this court, defendant contended that the trial court erred when it denied his pretrial motion for continuance to obtain private counsel, when it failed to order a competency hearing to determine his fitness to stand trial or be sentenced, and when it denied his petition for treatment as an alternative to imprisonment. The reviewing court affirmed his conviction, holding that the trial court's denial of the motion for continuance was proper because defendant was trying to delay his trial, that its failure to order a competency hearing was proper as

No. 1-06-0038

there was no *bona fide* doubt regarding his fitness to stand trial, and that its denial of his treatment-alternative petition was proper since, though he was found eligible for TASC, the evaluators had not yet reviewed his criminal history and the trial court doubted both his rehabilitative potential and the safety of the public if he were not imprisoned. See People v. Gale, No. 1-01-4279 (2003) (unpublished order pursuant to Illinois Supreme Court Rule 23). Later, defendant filed a *pro se* motion for order *nunc pro tunc*, arguing that the trial court had unlawfully sentenced him to 16 years' imprisonment for a Class 2 offense which allows only for a 14-year maximum. Upon review, the trial court corrected the original mittimus in the cause to reflect that defendant had been sentenced as a Class X offender due to his prior criminal history.

Defendant then filed a *pro se* postconviction petition alleging seven principle grounds for relief: (1) the trial court improperly sentenced him to 16 years for burglary; (2) it erred in denying his motion for continuance regarding his issues with defense counsel; (3) it improperly denied his motion for continuance that would have allowed TASC to evaluate him; (4) it improperly conducted *voir dire*; (5) it failed to inform the jury of a potential lesser-included offense; (6) it erred by allowing the jury to see certain evidence and then telling the jury to disregard it; and (7) he was denied effective assistance of trial counsel because counsel did not prepare for trial and did not challenge a certain juror's conduct during trial. The court addressed each of defendant's claims, ultimately finding his postconviction petition to be frivolous and patently without merit. Specifically, the court found that defendant was properly sentenced to 16 years' imprisonment because he was sentenced as a Class X offender, *res judicata* barred his claims concerning the dismissals of his motions for continuance (the trial and appellate courts already decided the issue

4

regarding defense counsel, and the TASC evaluation issue had already been raised on appeal), defendant had no support for his claim regarding *voir dire*, waiver barred his claims regarding a lesser-included-offense instruction and the jury's viewing of evidence since these could have been raised on direct appeal, and defendant could not show that counsel's performance was unreasonable or that he suffered prejudice from ineffectiveness. Accordingly, the court summarily dismissed defendant's petition. Following this, the court assessed defendant "filing fees and actual court costs in the amount of $105.00; $90.00 for filing a petition to vacate, modify, or reconsider final judgment plus $15.00 in mailing fees, pursuant to 705 ILCS 105/27.2(a) (West 2004)."

## ANALYSIS

On appeal, defendant asserts that the trial court erred in summarily dismissing his postconviction petition because it stated the gist of a constitutional claim entitling him to relief. Specifically, he contends that he adequately demonstrated he was denied effective assistance of trial counsel when his counsel failed to obtain his mental health records where such records could have given rise to a *bona fide* doubt of his fitness to stand trial and could have served as mitigation at sentencing. In addition, defendant contends that, regardless of our finding on that issue, he should not have been assessed a $90 filing fee because it is not mandated by statute, and the assessment of costs and fees should be vacated as violative of his federal and state rights to due process and equal protection. We disagree with each of defendant's contentions.

## I. Postconviction Petition

We turn first to defendant's contention concerning the summary dismissal of his postconviction petition.

No. 1-06-0038

The Illinois Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2004)) provides a tool to criminal defendants by which they can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. See 725 ILCS 5/122-1(a) (West 2004); see also People v. David Harris, 206 Ill. 2d 293, 299 (2002); accord People v. Coleman, 183 Ill. 2d 366, 378-79 (1998). "[P]ostconviction relief is limited to constitutional deprivations which occurred at the original trial." Coleman, 183 Ill. 2d at 380. A proceeding brought under the Act is not an appeal of a defendant's underlying conviction but, rather, is a collateral attack on the judgment. See People v. Evans, 186 Ill. 2d 83, 89 (1999); see also David Harris, 206 Ill. 2d at 299 (the defendant's innocence or guilt is not relitigated). That is, "[t]he purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." People v. Barrow, 195 Ill. 2d 506, 519 (2001). Thus, *res judicata* bars consideration of issues that were raised and decided on direct appeal, while issues that could have been presented on direct appeal but were not are considered waived. See David Harris, 206 Ill. 2d at 299; accord Barrow, 195 Ill. 2d at 519.

Based on these principles, we find that defendant's claim of ineffective assistance of trial counsel due to counsel's failure to obtain his mental health records for trial and sentencing is waived. This issue could have been raised previously on direct appeal, but defendant chose not to do so. Interestingly, he did assert on direct appeal that the *trial court* had erred by not conducting a competency hearing, presumably related to his mental health records, but never mentioned anything regarding defense counsel and this issue. Obviously, then, the issues of competency and

6

mental health were known to defendant at the time he filed his direct appeal (if not before) but, again, he chose not to mention them in relation to counsel's representation of him during trial or sentencing. Instead, defendant alleged this error for the first time in his postconviction petition. Under these circumstances, this contention is forfeited for our review. See People v. Dominguez, 366 Ill. App. 3d 468, 475 (2006) (a defendant who sought to raise argument in postconviction petition that trial counsel was ineffective for failing to investigate his mental health waived this contention for purposes of appeal since issue could have been raised previously).

It is true that the postconviction waiver rule is relaxed in three situations: where fundamental fairness requires, where the facts relating to the defendant's claim do not appear on the face of the original appellate record, and where the alleged waiver stems from the incompetence of appellate counsel. See People v. James Harris, 206 Ill. 2d 1, 13 (2002). However, we note for the record that defendant does not argue any of these exceptions anywhere in his appellate or reply brief. Regarding the fundamental fairness exception, he does not set out what the standard for that exception is, nor does he attempt to apply it to his situation and, thus, any such claim that the forfeiture of this issue should be excused is itself forfeited. See Dominguez, 366 Ill. App. 3d at 475 (exception to forfeiture was itself forfeited where the defendant, raising ineffective assistance of counsel for failing to investigate his mental health records for first time in postconviction petition, claimed that fundamental fairness required he be allowed to litigate issue but did not set out standard or attempt to apply it). Regarding what appears on the appellate record, we have already discussed that defendant was cognizant, as early as his trial, that there was an issue, at least in his mind, regarding his mental health records and his

competency to stand trial and be sentenced. This is clear from his direct appeal when he challenged the trial court on these facts, as exemplified in the appellate record, but did not challenge defense counsel. See Dominguez, 366 Ill. App. 3d at 475 (where the defendant's claim in postconviction petition that trial counsel was ineffective for failing to investigate mental health was "substantially different" from claim addressed on direct appeal that trial counsel was ineffective for failing to move for fitness hearing, claim in postconviction petition was waived). And, finally, defendant is not alleging the incompetence of appellate counsel but, rather, of his trial counsel. See, *e.g.*, Dominguez, 366 Ill. App. 3d 468; see also James Harris, 206 Ill. 2d at 13. Thus, the postconviction forfeiture rule should not be relaxed here.

However, even were we to place waiver aside in this cause and consider the merits of defendant's claim, we note that at the dismissal stage of a postconviction proceeding, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief. See Coleman, 183 Ill. 2d at 380; see also David Harris, 206 Ill. 2d at 299-300 (the defendant is not entitled to evidentiary hearing unless allegations in petition, supported by record and affidavits, make substantial showing of constitutional violation). Under section 122-2.1(a)(2), the trial court is to dismiss a petition within 90 days of its filing if the court determines that it is "frivolous" or "patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2000). A postconviction petition is considered frivolous or patently without merit if the allegations in the petition, taken as true and liberally construed, fail to present the "gist" of a constitutional claim. See People v. Edwards, 197 Ill. 2d 239, 244 (2001); see also People v. Porter, 122 Ill. 2d 64, 74 (1988) (in order to avoid dismissal,

8

defendant need only present the "gist" of a constitutional claim that would provide relief under the Act). This "gist" standard is a low threshold which requires the defendant to present only a limited amount of detail, not the claim in its entirety or legal argument or citation to legal authority. See Edwards, 197 Ill. 2d at 244. However, a trial court may summarily dismiss a postconviction petition if the defendant's allegations are contradicted by the record from the original trial proceedings. See People v. Rogers, 197 Ill. 2d 216, 222 (2001).

The question for us, as a reviewing court, in considering a postconviction petition dismissed as frivolous and patently without merit is whether the defendant has alleged the gist of a constitutional claim in his petition. See Coleman, 183 Ill. 2d at 389; accord People v. Woidtke, 313 Ill. App. 3d 399, 405 (2000). Accordingly, our standard of review is *de novo*. See Coleman, 183 Ill. 2d at 389; Woidtke, 313 Ill. App. 3d at 405 (our review in this context is "plenary").

Regarding trial counsel in the postconviction context, claims of ineffective assistance are examined under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). See David Harris, 206 Ill. 2d at 303; accord James Harris, 206 Ill. 2d at 15. Succinctly, under Strickland, a defendant must demonstrate both that his trial counsel's performance was deficient and that this deficient performance substantially prejudiced him. See People v. Hobley, 182 Ill. 2d 404, 451 (1998); see also David Harris, 206 Ill. 2d at 303; James Harris, 206 Ill. 2d at 16 (proving both prongs is required to succeed on claim). To demonstrate performance deficiency, the defendant must establish that trial counsel's performance fell below an objective standard of reasonableness. See David Harris, 206 Ill. 2d at 303; James Harris, 206 Ill. 2d at 16; People v. Edwards, 195 Ill. 2d 142, 163 (2001). Meanwhile, to

demonstrate sufficient prejudice, the defendant must show that there is a reasonable probability that, but for his trial counsel's unprofessional errors, the result of the proceedings would have been different. See David Harris, 206 Ill. 2d at 303; James Harris, 206 Ill. 2d at 16. A reasonable probability is one sufficient to undermine the confidence in the outcome. See David Harris, 206 Ill. 2d at 304 (trial counsel's deficient performance must have "rendered the result of the trial unreliable or fundamentally unfair"); James Harris, 206 Ill. 2d at 16. Again, the defendant must satisfy both the performance and prejudice prongs of the Strickland test to succeed on his claim of ineffective assistance of trial counsel; however, if it is determined that he did not suffer prejudice, whether trial counsel's performance was constitutionally deficient need not be decided. See David Harris, 206 Ill. 2d at 304.

Under Strickland, reviewing courts entertain a strong presumption that trial counsel's performance was a product of sound trial strategy and professional judgment. See David Harris, 206 Ill. 2d at 303; see also Hobley, 182 Ill. 2d at 454; People v. Giles, 209 Ill. App. 3d 265, 269 (1991) (the defendant must overcome this presumption under the circumstances of his cause). " '[N]either mistakes in strategy nor the fact that another attorney with the benefit of hindsight would have handled the case differently indicates that [trial counsel] was incompetent.' [Citation.]" People v. Young, 341 Ill. App. 3d 379, 383 (2003). Accordingly, "a decision that involves a matter of trial strategy will typically not support a claim of ineffective representation." People v. Simmons, 342 Ill. App. 3d 185, 191 (2003). Ultimately, any decision of defense counsel to conduct a less-than-complete investigation regarding an issue, including a defendant's mental health, falls within the wide range of professionally competent assistance, so long as this

10

No. 1-06-0038

decision is supported by reasonable professional judgment as evaluated from defense counsel's perspective at the time and under all relevant circumstances. See James Harris, 206 Ill. 2d at 56-57; People v. Ganus, 185 Ill. 2d 355, 367 (1998) ("a heavy measure of deference" is given to trial counsel's decision not to investigate further into a defendant's mental health). Specific to the instant case, our state supreme court has held that defense counsel's failure to introduce a defendant's mental health records is generally a strategic decision and, to prevail on a claim that trial counsel was ineffective for failing to introduce such records, the defendant must show that he was prejudiced and that the outcome of the proceedings would have been different. See, *e.g.*, People v. Haynes, 192 Ill. 2d 437, 474-75 (2000) (counsel was not ineffective where the defendant failed to make substantial showing that, had counsel introduced his mental health records, there was a reasonable probability that outcome would have been different); People v. Easley, 192 Ill. 2d 307 (2000) (counsel's failure to explore use of the defendant's mental health as mitigation strategy was not ineffective where the defendant did not show prejudice); People v. Wright, 149 Ill. 2d 36, 51-52 (1992) (failure to present the defendant's mental health records was not ineffective, as no prejudice could be shown).

Defendant asserts in his postconviction petition that his trial counsel's failure to obtain his mental health records prejudiced him because these records "may have undermined" his fitness to stand trial and/or be sentenced, and would have resulted in a different outcome because they "would very likely have mitigated against the 16-year sentence he received" and "may have resulted in a sentence of TASC probation." However, based upon our review of defendant's petition, as well as the record in the instant case and the record in the underlying appeal, we find

11

that his claims of ineffective trial counsel in relation to the failure to obtain his mental health records cannot stand. Simply put, defendant fails, for the reasons discussed below, to adequately demonstrate either the performance deficiency prong of the Strickland test or the prejudice prong indicating a reasonable probability that trial counsel's investigation into and presentation of these records to the trial court would have changed the outcome of his trial or sentence.

First and foremost, it is clear to us that strategy played a prime role in trial counsel's decision during both trial and sentencing not to investigate further into defendant's mental health or to present the records regarding the three occasions on which he sought mental health treatment. In the trial phase, at the outset of which counsel specified for the court that he was prepared, that he investigated the scene and that he consulted with defendant on multiple occasions, defendant's chosen theory on the case was that he never entered the boxcar he was accused of burglarizing. Rather, his defense was that he and an acquaintance were driving by the railyard when they saw a box lying in the parking lot--not in the railyard and not on railyard property--and defendant got out of the car and walked up to the box only to see what was in it; he then saw two men approaching him whom he admittedly thought were police officers and ran. Also, defendant admitted on cross-examination that he knew the box was not, then or at the time of trial, his. As the reviewing court found on direct appeal, and as we concur upon our own review of the trial transcript, "defendant participated in his defense by clearly and coherently answering questions under direct and cross-examination and expressed remorse and a desire to rehabilitate himself." Defendant, then, competently participated and testified at trial so that his fitness was not at any time in doubt and, clearly, his defense had nothing to do in the least with his

12

mental health. In fact, any mention that defendant had mental health issues would have directly countered his own defense, which was that he knowingly did not enter the boxcar and was not on railway property at the time of the incident. Strategically, his mental health records had no bearing on his trial. See, *e.g.*, Easley, 192 Ill. 2d 307.

Furthermore, we fail to see how trial counsel's failure to obtain defendant's mental health records prejudiced him during the sentencing phase of the proceedings or would have changed its outcome. In an effort to mitigate his sentence, trial counsel did inform the court that defendant had sought mental health help on three occasions, in addition to the fact that he had been taking Prozac and Trazodone; this information was contained in defendant's presentence investigation report which trial counsel submitted to the court, along with the TASC evaluation that found defendant eligible for mental illness and substance abuse placement. Trial counsel also prepared defendant's mother to testify on his behalf. Clearly, the trial court was more than aware of defendant's mental health history--as well as defendant's side of the story regarding the instant crime, which included his knowledge that the box he "found" did not belong to him and that he fled when he saw police. As we described above, obtaining further information about defendant's mental health for sentencing, when all this evidence had already been submitted before the court, simply would not have helped defendant here in light of the circumstances. See Easley, 192 Ill. 2d at 339 (counsel's failure to explore use of the defendant's mental health as mitigation strategy was not ineffective because the defendant could not show he was prejudiced in light of evidence demonstrating he acted rationally and composed before, during and after crime and had attempted to avoid detection, showing he appreciated the criminality of his acts).

No. 1-06-0038

Moreover, defendant has consistently failed, since the first time he raised this issue of mental health, to indicate what information his records contain, other than that he was "admitted" to mental health institutions on three separate occasions when he was 21, 24 and 26 years old by his mother, who believed he was "depressed." Defendant has never expounded upon any treatment he may have received or a diagnosis of any sort of disorder he may have. It could very well be that further investigation into his mental health records would have revealed that defendant was not mentally ill and that these institutions had found nothing wrong with him. See Wright, 149 Ill. 2d at 51-52 (failure to present the defendant's mental health records at sentencing did not amount to ineffective assistance where trial court knew of history of institutionalization and records could have been used in aggravation). We simply do not know, as defendant has not attached the mental health records (or any other evidence related thereto) to his postconviction petition in support of his allegation. See People v. Charles Harris, 224 Ill. 2d 115, 126 (2007) (postconviction petitioner must attach to petition affidavits, records, or other evidence supporting its allegations or explain why they are not attached, and the failure to comply with this "is fatal and by itself justifies the petition's summary dismissal"). In conjunction with this is the relevancy of these records. That is, defendant was 32 years old when he was charged with the crime involved herein. Yet, his "admissions" for mental health "treatment" date back 6 to 11 years before the crime; they were three separate instances and there is no indication that defendant was receiving any ongoing treatment during the years before the crime.

Most significantly, we cannot accept defendant's assertion that the presentation of his mental health records would have changed the outcome of his sentence. Defendant was

14

sentenced under the Class X offender statute, which allows for a sentence of between 6 and 30 years in prison. See 730 ILCS 5/5-8-1(a)(3) (West 2004). And, unlike defendant's contention here that had counsel presented his mental health records he may have received probation for the burglary, the Class X offender statute prohibits probation or treatment alternatives as options to incarceration. See 730 ILCS 5/5-5-3(c)(8) (West 2004) (one sentenced as Class X offender "is not eligible to apply for treatment as a condition of probation"). Thus, defendant's 16-year prison sentence was wholly proper. In addition, the court specified that, regardless, it had concluded the sentence was appropriate based on two important factors: the protection of the public and defendant's low rehabilitative potential due to his lengthy criminal history. Again, the court was aware that defendant had a mental health history; by its colloquy, however, it is clear that this did not impact the its decision regarding defendant's sentence. See People v. Economy, 291 Ill. App. 3d 212, 220 (1997) (trial court is not obligated to advise defendant of treatment alternatives if it determines his imprisonment is necessary to protect the public or potential success for his rehabilitation is low).

Based on all this, we find no merit in defendant's postconviction allegation that his trial counsel was ineffective for failing to obtain his mental health records. Therefore, the trial court correctly dismissed defendant's postconviction petition without an evidentiary hearing.

## II. Filing Fee as "Unauthorized"

Defendant's next contention is that, even if we affirm the trial court's summary dismissal of his postconviction petition, we should vacate the $90 filing fee he was ordered to pay pursuant to section 22-105(a) of the Illinois Code of Civil Procedure (Code). See 735 ILCS 5/22-105(a)

(West 2004). Defendant asserts that, because this statutory section does not specifically refer to fees for filing "postconviction petitions" and because no other statutory section does either, the trial court lacked authority to assess the $90 filing fee.

In its order summarily dismissing defendant's postconviction petition as frivolous and patently without merit, the trial court cited section 22-105 and assessed a $105 fine against defendant, including "$90.00 for filing a petition to vacate, modify, or reconsider final judgment." We find this to have been wholly proper.

The Illinois Court of Claims Act dictates that our trial courts are authorized to impose fees upon "[a] petitioner who is a prisoner in an Illinois Department of Corrections facility who files a pleading, motion, or other filing *** in which the court makes a specific finding that it is frivolous." 705 ILCS 505/21 (West 2004). According to this section, when a court has made a finding of frivolous, it may order the petitioner to "pay all filing fees and court costs in the manner provided in Article XXII of the Code of Civil Procedure." 705 ILCS 505/21 (West 2004). Turning to Article XXII of the Code, section 22-105, entitled "Frivolous lawsuits filed by prisoners," states in relevant part:

"(a) If a prisoner *** files a pleading, motion, or other filing which purports to be a legal document in a case *seeking post-conviction relief under Article 122 of the Code of Criminal Procedure* ***, pursuant to Section 116-3 of the Code of Criminal Procedure ***, in a habeas corpus action ***, in a claim under the Court of Claims Act, or in another action against the State, the Illinois Department of Corrections, or the Prisoner Review Board, or against any of their

officers or employees and the Court makes a specific finding that the pleading, motion, or other filing which purports to be a legal document filed by the prisoner is frivolous, the prisoner is responsible for the full payment of filing fees and actual court costs." (Emphasis added.) 735 ILCS 5/22-105(a) (West 2004).

Section 27.2a of the Illinois Clerks of Courts Act, which deals with circuit court fees in counties of 3 million or more, states that a minimum fee of $75 and a maximum fee of $90 is to be charged to those who file

"[p]etition[s] to vacate or modify any final judgement or order of court, except a petition to modify, terminate, or enforce a judgment or order for child or spousal support or to modify, suspend, or terminate an order for withholding, if filed later than 30 days after the entry of the judgment or order." 705 ILCS 105/27.2a(g)(2) (West 2004).

From this, it is clear that, contrary to defendant's contention here, the trial court did have the authority to order him to pay the $90 filing fee once it determined his postconviction petition was frivolous. While section 22-105(a) may not refer in exact words to prisoners filing "postconviction petitions," it unmistakably states that a fee will apply to a prisoner's pleading, motion or other filing "seeking post-conviction relief under Article 122 of the Code of Criminal Procedure." 735 ILCS 5/22-105(a) (West 2004). That the fee will apply to postconviction petitions, then, cannot be any clearer, as these petitions are "seeking post-conviction relief" and are brought under our Post-Conviction Hearing Act (725 ILCS 5/122-1 et seq. (West 2004)). Such a finding is in line with section 21 of our Court of Claims Act as noted above, specifically

17

authorizing our trial courts to impose fees when a prisoner's petition is found to be frivolous. See 705 ILCS 505/21 (West 2004).

Defendant argues that the $90 fee was not valid because the trial court here relied on section 27.2a(g)(2) of the Clerks of Courts Act which, he asserts, "appears to be tailored to civil proceedings only" and applies only to petitions to vacate of modify final judgment, which a postconviction petition is not. Upon our review of section 27.2a(g)(2), however, we find no support for either of these claims. First, section 27.2a(g)(2) is not limited to "civil proceedings only." That section states that it applies to petitions to vacate or modify "any final judgment or order of court." 705 ILCS 105/27.2a(g)(2) (West 2004). It does not distinguish between civil or criminal proceedings but, rather, includes petitions to vacate or modify *any* judgment. The only conditions included in the section are (1) that the petition is not one to modify, terminate or enforce a judgment or order regarding child support, spousal support or withholding; and (2) that the petition is filed later than 30 days after the entry of the judgment or order it seeks to vacate or modify. See 705 ILCS 105/27.2a(g)(2) (West 2004). In fact, section 27.2a(a), entitled "Civil Cases," not section 27.2(g)(2), is the section that deals with fees in civil cases.[1] Therefore, we do

---

[1]Defendant further comments that subsection (g)(2) must deal with civil judgments only since subsection (w) of section 27.2a is entitled "Criminal and Quasi-Criminal Costs and Fees"; he then states that because subsection (w) does not mention postconviction petitions, no fees must apply to them. While it is true that subsection (w) does not mention postconviction petitions in its list of fees, as defendant himself admits in his brief, a postconviction petition is a "unique proceeding" in that it is a collateral attack on a judgment that can be brought years after

No. 1-06-0038

not find defendant's assertion to be correct.

Moreover, we cannot agree with defendant's claim that section 27.2a(g)(2)'s fees cannot apply to postconviction petitions because postconviction petitions are not "petitions to vacate or modify" final judgments or court orders. This argument holds no water. Postconviction petitions act precisely as vehicles for prisoners who are seeking to vacate and/or modify the final judgments of conviction and/or sentence entered in their causes. See, *e.g.*, People v. Pearson, 216 Ill. 2d 58 (2005) (upon grant of postconviction petition, trial court's holding was vacated and cause was remanded); People v. Mrugalla, 371 Ill. App. 3d 544 (2007) (postconviction petition seeking to vacate the defendant's conviction); People v. Roger Harris, 366 Ill. App. 3d 1161 (2006) (postconviction petition seeking to vacate sentences); People v. Fields, 357 Ill. App. 3d 780 (2005) (postconviction petition seeking new trial). Even defendant's very own postconviction petition states that "the spirit and purpose" of his petition and his "relief request" is "to vacate the court[']s judgement(s) herein [*sic*]" and, particularly, "to be re-sentenced." Accordingly, then, defendant himself sought, in filing his postconviction petition, to vacate the trial court's final

conviction and wherein the defendant's innocence or guilt is not relitigated. See Evans, 186 Ill. 2d at 89; David Harris, 206 Ill. 2d at 299. Thus, there is no logical reason for a postconviction petition fee to be listed in subsection (w), which deals with criminal offenses such as felony complaints, traffic ordinance violations and bond forfeitures. Rather, it is clear that it is in subsection (g)(2), which deals specifically with petitions "filed later than 30 days after the entry" of "any final judgment or order" where a postconviction fee belongs. 705 ILCS 105/27.2a(g)(2) (West 2004).

19

No. 1-06-0038

judgment of his 16-year sentence and to obtain a modified sentence.

For these reasons, we find that the trial court's imposition of a $90 filing fee once it found defendant's postconviction petition to be frivolous was proper.

### III.  Filing Fees as "Violative of Rights"

Defendant's final contention is that, even if the $90 fee for filing his postconviction petition was authorized, the $105 amount charged by the trial court (the sum of $90 for his petition plus $15 in mailing fees) pursuant to section 22-105 (735 ILCS 5/22-105 (West 2004)) should still be vacated because that statute is unconstitutional in that it violates his due process and equal protection rights.  Regarding due process, defendant claims that this section unfairly discriminates on the basis of poverty, creating a financial hurdle "uniquely burden[ing] indigent prisoners." Defendant asserts that only indigent petitioners are impacted since they are the ones who "must rely on [their] own assessment of the merits of [their] claim[s]" while at the same time they are the ones who are most likely to be intellectually limited in deciphering and presenting their claims; this results in a risk of incurring a financial penalty that they "cannot realistically" avoid and, thus, in a "chill[ing]" of the assertion of their due process rights.  Regarding equal protection, defendant claims that section 22-105 must be reviewed under a strict scrutiny test, as the fundamental right of access to the courts is involved.  Defendant asserts that the section does not survive this test, since there is no compelling reason in targeting prisoners to the exclusion of other indigent petitioners (such as probationers or those on mandatory supervised release) and since the provision is not narrowly tailored in that it imposes a penalty without regard to the number of the petitioner's previous postconviction filings.

20

In addressing a challenge to the constitutionality of a statute, we begin with the presumption that the statute is constitutional. See People v. Malchow, 193 Ill. 2d 413, 418 (2000). If reasonably possible, a court must construe the statute so as to uphold its constitutionality and validity. See Malchow, 193 Ill. 2d at 418. The party challenging the statute's constitutionality has the burden of demonstrating its invalidity. See Malchow, 193 Ill. 2d at 418. Whether the statute is constitutional is reviewed under a *de novo* standard. See Malchow, 193 Ill. 2d at 418.

When a statute is challenged as unconstitutional under due process or equal protection, our analysis is essentially the same. See People v. Williams, 358 Ill. App. 3d 363, 366 (2005) (standards used to determine constitutionality under due process and equal protection "are identical"); People v. Ragusa, 346 Ill. App. 3d 176, 182 (2004) (standards used to review due process challenge are the same as those used to review equal protection challenge); accord People v. Kimbrough, 163 Ill. 2d 231, 242 (1994). If the statute involves a fundamental right or a suspect classification, we employ a strict scrutiny analysis wherein we must examine whether the means used by the legislature (*i.e.*, the statute) is necessary to achieve a compelling state interest and whether the statute is narrowly tailored to accomplish that interest. See People v. Cornelius, 213 Ill. 2d 178, 204 (2004) (legislature must employ least restrictive means consistent with attaining its goal). However, if the statute does not affect a fundamental constitutional right or involve a suspect classification, the rational basis test applies to determine constitutionality. See Cornelius, 213 Ill. 2d at 203; People v. Shephard, 152 Ill. 2d 489, 500 (1992). Under this analysis, the challenged statute must simply bear a rational relationship to the purpose the

legislature intended to achieve by enacting it. See <u>Shephard</u>, 152 Ill. 2d at 500; <u>People v. Windsor</u>, 242 Ill. App. 3d 1030, 1033 (1993). We give high deference to the legislature in this regard; we are not concerned with the wisdom of the statute or even if it is the best means to achieve the goal, but only with whether there is any sort of conceivable basis for finding the statute rationally related to a legitimate state interest. See <u>People v. P.H.</u>, 145 Ill. 2d 209, 229 (1991); <u>Windsor</u>, 242 Ill. App. 3d at 1033.

It is clear to us that, contrary to defendant's contention, the proper analysis we are to employ here in reviewing the constitutionality of section 22-105 is the rational basis test, not the strict scrutiny test. First, neither indigent defendants nor prisoners comprise suspect classifications. See <u>Jenkins v. Leininger</u>, 277 Ill. App. 3d 313, 324 (1995); accord <u>People v. Garvin</u>, 152 Ill. App. 3d 438, 444 (1987), *rev'd on other grounds,* 121 Ill. 2d 576 (1988); see also <u>People v. Botruff</u>, 212 Ill. 2d 166, 176-77 (2004) (suspect classifications include race, national origin, sex and illegitimacy; in cases not involving these, rational basis test is to be used). Second, while there is a fundamental right of access to the courts and to litigate claims, there is not a fundamental right to do so without expense. See <u>Crocker v. Finley</u>, 99 Ill. 2d 444, 454-55 (1984) (constitution does not guarantee to citizens right to litigate without expense; fees and taxes can be imposed if related to operation and maintenance of courts). Our courts have reaffirmed this principle in several instances. See, *e.g.*, <u>People v. Nicholls</u>, 71 Ill. 2d 166 (1978) (assessing costs against indigent defendants upon appeal); <u>Fried v. Danaher</u>, 46 Ill. 2d 475 (1970) (upholding fee upon those requesting jury demand, even if jury is not subsequently empaneled); <u>People v. Maxon</u>, 318 Ill. App. 3d 1209 (2001) (cash bail bond can be applied to appointed counsel fees

No. 1-06-0038

even though the defendant is indigent).

Accordingly, in applying the rational basis test under a due process analysis, we note that as long as the statute in question is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare, it must be upheld. See Williams, 358 Ill. App. 3d at 366-67; accord Schultz v. Lakewood Electric Corp., 362 Ill. App. 3d 716, 720 (2005). Our legislature has made clear, by its enactment of various statutory provisions, that, while it is willing to offer certain types of further relief to prisoners beyond their trials and appeals, it is concerned with the number of frivolous petitions that may be filed seeking such relief which, in turn, impacts the efficiency of our courts and the effectiveness of our administrative process. See People v. Anderson, 352 Ill. App. 3d 934, 946 (2004) (various provisions exist to "discourage frivolous petitions" for *habeas corpus*, *mandamus*, section 2-1401 relief and other pleadings likely to be employed by prisoners, including, specifically, section 22-105 allowing for the assessment of filing fees and court costs against prisoners who file frivolous pleadings); see also People v. Greer, 212 Ill. 2d 192, 208 (2004) (fees and costs provision of Post-Conviction Hearing Act was meant to penalize defendants for filing frivolous petitions).

From this, it is our view that section 22-105 was rationally designed to remedy this situation by making prisoners responsible for fees and costs associated with frivolous filings. While it may not be perfect in every regard, this statutory section outlines a prisoner's responsibility when filing a pleading, motion or other document and, in direct contradiction to defendant's contention, does not "uniquely burden" indigent prisoners from filing claims. That is, section 22-105 informs all prisoners, regardless of wealth, that they may not file a frivolous

23

petition; it then outlines exactly what "frivolous" means so they can guard against such a determination (see 735 ILCS 5/22-105(b) (West 2004)); and finally, it specifies that payment of fees and costs charged when a petition is held to be frivolous is to be collected from that prisoner only "*when funds exist*," only in the amount corresponding to his prison trust fund account, and only until the fees are collected in full (735 ILCS 5/22-105(a) (West 2004) (setting out the payment scheme based on prison trust fund account)). In fact, on this last point, section 22-105(a) specifically states that "[n]othing in this Section prohibits an applicant from filing an action or proceeding if the applicant is unable to pay the court costs." 735 ILCS 5/22-105(a) (West 2004).

Clearly, then, section 22-105 does not present a "financial hurdle" unfairly impacting indigent petitioners. Rather, it simply charges fees and costs to the prison trust fund accounts of all prisoners regardless of financial status and only if these funds exist, but ultimately never prohibits them from exercising their postconviction relief rights. There is more than a conceivable basis for finding that these provisions are rationally related to our state's interest in maintaining the efficiency and administration of our legal system and, thus, we hold that section 22-105 does not violate due process.[2]

---

[2]It is unclear from defendant's brief on appeal whether he is challenging section 22-105 based on substantive or procedural due process. After reviewing his argument, it is our belief that he has asserted substantive due process concerns, which we have dealt with above. However, were he also attempting to raise procedural due process concerns, we would still find that section 22-105 is not violative of these. An attack on procedural due process focuses on the statute's

No. 1-06-0038

Furthermore, defendant's contentions that section 22-105 violates equal protection because it targets prisoners to the exclusion of others who may avail themselves of postconviction relief and because it does not account for the number of postconviction petitions a defendant files also fail here. In applying the rational basis test under an equal protection analysis, we note that, while this principle requires the government to treat similarly situated individuals in a similar fashion, it does not prevent the government from drawing distinctions between different categories of people in enacting legislation. See People v. Coleman, 111 Ill. 2d 87, 95 (1986); accord Schultz, 362 Ill. App. 3d at 727-28, quoting Wauconda Fire Protection District v. Stonewall Orchards, LLP, 214 Ill. 2d 417, 434 (2005). In this regard, the statute at issue must only have a rational basis for distinguishing the category of people to which it applies from the category of people to which it does not. See Shephard, 152 Ill. 2d 500.

As defendant points out, section 22-105 applies only to "prisoner[s] confined in an Illinois Department of Corrections facility." 735 ILCS 5/22-105(a) (West 2004). However, defendant's assertion that this violates equal protection because it does not apply to probationers and those on

specific procedures and whether the statute provides an "opportunity to be heard at a meaningful time and in a meaningful manner." In re Phillip C., 364 Ill. App. 3d 822, 831 (2006); accord P.H., 145 Ill. 2d at 235. Thus, defendant would be required to show that section 22-105 deprived him of a protected liberty or property interest. See Phillip C., 364 Ill. App. 3d at 831. Defendant had his opportunity for trial, appeal, and to file his postconviction petition, and, as we have discussed, section 22-105 orders him to pay fees only if funds exist in his prison trust fund; he fails to indicate what more process he is "due." See, e.g., Phillip C., 364 Ill. App. 3d at 831-32.

25

mandatory supervised release is incorrect. It is true that probationers and such releasees, along with those released on appeal bond and those released from incarceration after filing a postconviction petition, and of course prisoners, all may avail themselves of postconviction relief. See People v. West, 145 Ill. 2d 517, 518-19 (1991) (though Post-Conviction Hearing Act states that relief may be sought by those "imprisoned in the penitentiary," our case law has indicated that imprisonment is not prerequisite). Yet, while postconviction relief does not belong exclusively to prisoners, our very experience has demonstrated to us that it is, overwhelmingly, prisoners who are filing postconviction petitions rather than any other category of people. It stands to reason, then, that the incidence of frivolous petitions is considerably higher among prisoners, as they are more likely to file petitions as a whole. This, coupled with the legislature's concern with the sheer number of petitions that may be filed under the various statutory provisions allowing for postconviction relief as we discussed earlier, clearly presents a more than reasonable basis for distinguishing between prisoners, to which section 22-105 applies, and others seeking similar relief such as probationers and releasees, to which it does not.

Finally, defendant's argument that section 22-105 "can hardly be considered narrowly tailored" since it is not restricted to petitioners who repeatedly burden the courts with frivolous claims is of no moment. As we have discussed, section 22-105, which does not involve a suspect classification or a fundamental right, is not subject to a strict scrutiny analysis which would require a review of whether it is narrowly tailored but, rather, a rational basis analysis which requires only that the means the statute employs are rationally related to its purpose. Moreover, we fail to see how defendant's insistence that section 22-105 should apply only to those who have

26

filed more than one postconviction petition is appropriate. Ironically, with this assertion, defendant is asking that a classification be carved out to which section 22-105 is to be applied (*i.e.*, successive postconviction petitioners); this is in direct contradiction to his principle argument that the more general classification of "prisoners" violated equal protection in the first place because it did not include others who also have the option to avail themselves of postconviction relief. Again, the legislature's enactment of section 22-105 and other similar fee provisions came in response to its concern regarding the number of pleadings, motions and other documents that would be filed seeking postconviction relief *in general*. That section 22-105 does not distinguish between those who have filed one or more than one such petition further supports this conclusion; regardless of how many times one may file a postconviction petition, each and every one of them is always first reviewed to determine whether it is frivolous.

Therefore, based on all this, we find that section 22-105 does not violate any constitutional due process or equal protection rights.

## CONCLUSION

For all the foregoing reasons, we find that defendant's postconviction petition was properly dismissed for failing to state any meritorious claims and that the $105 in fees and costs was properly assessed against him. Accordingly, we affirm the judgment of the trial court.

Affirmed.

TULLY and O'MARA FROSSARD, JJ., concur.

27