Sixth Division
June 20, 2008

No. 1-06-3384

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 97 CR 18943 |
| | ) | |
| SIRENA SMITH, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Dennis J. Porter, |
| | ) | Judge Presiding |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Defendant Sirena Smith appeals the trial court's dismissal of her successive postconviction petition, arguing that (1) the trial court erred in summarily dismissing her postconviction petition; (2) the prosecutor's input at the first stage of defendant's postconviction proceedings was error; (3) the trial court erred in assessing defendant a $90 filing fee and a $50 State's Attorney fee; and (4) the trial court's assessment of fees and costs violates defendant's constitutional rights of equal protection and due process.

In March 2001, defendant, through her attorney, participated in a Supreme Court Rule 402 (177 Ill. 2d R. 402) conference with the State and the trial court. After the conference, defendant entered into a plea of guilty to one count of felony murder in the June 1997 death of Debbie Happ in exchange for a sentence of 48 years' imprisonment. The trial court questioned defendant about her decision to plead guilty. Specifically, the court discussed the rights defendant would be giving up and circumstances of her case. The court advised the defendant of the charge of murder and asked her if she understood the charge against her, which defendant

indicated that she did. The trial court explained how a jury trial works and that by pleading guilty, defendant would be waiving a jury trial. Defendant stated that she understood what a jury trial was and had no questions about a jury trial. She then signed a jury waiver, which the trial court accepted. The court further described how a trial works and that in a trial, she would be presumed innocent. The court informed defendant that by pleading guilty, she was giving up her right to a trial, the right to confront witnesses and to call witnesses in her defense, the right to testify in her own defense, and the presumption of innocence. After asking defendant her age and how far she went in school, the trial court engaged in the following colloquy with defendant.

"THE COURT: Did anybody force you to plead guilty?

DEFENDANT SMITH: No.

THE COURT: Anybody threaten you to make you do it?

DEFENDANT SMITH: No.

* * *

THE COURT: Did anybody promise you anything —

DEFENDANT SMITH: No.

THE COURT: — to get you to plead guilty other than I said I would sentence you to 48 years in the penitentiary, other than that?

DEFENDANT SMITH: No.

* * *

THE COURT: Your lawyer, have you talked to your lawyer

about your case?

DEFENDANT SMITH: Yes.

THE COURT: Are you satisfied with his representation?

DEFENDANT SMITH: Yes.

THE COURT: Do you understand that you have a right to continue to plead not guilty and to demand a trial? You can force the State to give you a trial on this charge.

DEFENDANT SMITH: Yes.

THE COURT: Are you under the influence of drugs or alcohol now?

DEFENDANT SMITH: No."

The State offered the following factual basis. On June 11, 1997, defendant and her boyfriend William Riley entered into an apartment located at 1454 W. Fargo in Chicago, with the intention to commit a burglary. They entered through the rear door using a crowbar. While in the apartment, defendant and Riley were confronted by Happ, who said they were not allowed to stay in the apartment and if they did not leave, she would call the police. As Happ started to walk to the front of the apartment, Riley grabbed her, dragged her into the bedroom and started to choke her. Defendant followed Riley and saw him choking Happ and tying Happ up on the bed.

Defendant got a telephone cord and gave that to Riley, who used it to bind Happ's hands behind her back. Riley stuffed some underwear in Happ's mouth and gagged her with a belt tied around her mouth. Riley also tied the bindings on Happ's hands to a radiator. Riley left the

3

room and returned with the crowbar. He struck Happ in the head several times with the crowbar.

Defendant and Riley returned to the computer room and Riley took a portion of the computer. He placed it in a duffel bag bearing defendant's name. He also placed the crowbar in the bag. Defendant returned to the bedroom and took Happ's purse and a tape recorder. Defendant and Riley then left the apartment.

They went to the apartment of Robert Miller and tried to sell the computer. During the course of the police investigation, the duffel bag was recovered from Miller's apartment. The duffel bag contained the crowbar with blood on it as well as glass and paint chips. DNA testing was performed on the blood on the crowbar and it matched Happ's blood. Additionally, there was a hair in the bag consistent with the victim's hair. The glass and paint chips were consistent with the glass and the paint chips from the door of 1454 W. Fargo. Defendant was arrested and gave a court-reported statement detailing her involvement in the crime.

Defense counsel stipulated to the State's factual basis for the plea. The trial court asked defendant if, after everything it had said, she still wanted to plead guilty, and defendant responded that she did. The trial court then found that "defendant understands the nature of the charges against her, the possible penalties under the law, and her rights under the law." The court also found that defendant wished to waive those rights and enter a guilty plea. Additionally, defendant was sworn under oath and asked by the trial court if the State's facts were correct, and defendant responded that they were correct. She also identified the court-reported statement she gave.

Prior to sentencing, the trial court heard two victim impact statements, one each from Happ's father and brother. The court sentenced defendant to 48 years' imprisonment.

Defendant did not file a direct appeal. In September 2001, defendant filed a *pro se* postconviction petition alleging that her sentence violated Apprendi v. New Jersey, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), which was summarily dismissed. Defendant attached a letter to her petition in which she raised new claims of ineffective assistance of counsel based on her attorney's failure to properly defend her and she described her history of sexual abuse as a child, family issues and her fear of Riley. We granted appellate counsel's motion to withdraw pursuant to Pennsylvania v. Finley, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), and affirmed the summary dismissal. People v. Smith, No. 1-02-0334 (November 12, 2002) (unpublished order under Supreme Court Rule 23).

In August 2004, defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2004)) in which she alleged ineffective assistance of trial counsel. The trial court recharacterized her section 2-1401 petition as a successive postconviction petition before summarily dismissing it as frivolous and patently without merit. On appeal, based on the supreme court's decisions in People v. Pearson, 216 Ill. 2d 58 (2005), and People v. Shellstrom, 216 Ill. 2d 45 (2005), this court vacated the trial court's dismissal and remanded the case with instructions to allow petitioner an opportunity to withdraw or amend her *pro se* pleading. People v. Smith, No. 1-04-3321 (May 15, 2006) (unpublished order under Supreme Court Rule 23).

When the trial court considered the case on remand, it spoke with the assistant State's

Attorney (ASA) present in the courtroom. The ASA was not assigned to defendant's case, but was familiar with it since it had been remanded. After reading the remand, the trial court stated, "I have to remand with [*sic*] instructions to allow the petitioner an opportunity to withdraw or amend the *pro se* pleading." The court commented that the postconviction petition would still be at the first stage and the ASA said that it would be a successive postconviction petition. The court ordered defendant to be brought to court. The ASA noted the next date and said, "We'll have someone here."

In September 2006, defendant appeared before the trial court. A different ASA was present in the courtroom. The court explained to defendant that it intended to recharacterize her section 2-1401 petition as a postconviction petition and gave her the opportunity to withdraw or amend the petition. Defendant said that she understood her choices and would like to amend her petition. She immediately provided the court and the State with copies of her amended petition. Defendant also asked the trial court for clarification on the crime for which she had been convicted. The court told her she was convicted of first degree murder and confirmed that with the ASA. The court also explained to defendant that her conviction was based on the theory of accountability because she was "criminally responsible for the actions of another." The court informed defendant that she would be notified of its "ruling on [her] motion. If I docket it, you will be brought back and I'll appoint a lawyer for you on it."

Defendant's amended postconviction petition alleged ineffective assistance of counsel, stating that her attorney failed to investigate and present evidence of defendant's history of abuse. She also claimed that her attorney failed to present a valid affirmative defense of compulsion

6

because she was a victim of battered women's syndrome as a result of Riley's abuse. She stated that she acted out of fear for her life and that of the victim.

In October 2006, the trial court issued a written order denying leave to file the instant postconviction petition. The trial court found that defendant's claim of ineffective assistance of counsel was premised on the trial record and waiver precluded its consideration. The court also stated that "the record clearly and affirmatively rebuts [defendant's] claim that trial counsel failed to disclose in mitigation that the [defendant] suffered abuse and severe neglect throughout her life." The court held that there was no factual basis for defendant's claim of ineffective assistance of counsel. Further, the trial court stated that the defense of compulsion was unavailable to defendant and her claim was without merit. Similarly, the court held that defendant's claim was "devoid of the requirements for a necessity defense." Finally, the trial court noted that this was defendant's second postconviction petition and held that she failed to satisfy the cause and prejudice test under section 122-1(f) of the Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1(f) (West 2006)). According to the court's ruling, defendant raised several claims from the instant petition in earlier petitions and provided no explanation as to why the remaining claims were not previously raised. Also, the court found that defendant failed to demonstrate any prejudice inured from the failure to previously assert these claims.

This appeal followed.

Defendant first argues that the trial court erred in summarily dismissing her successive *pro se* postconviction petition because she stated the gist of a constitutional claim of actual

innocence based on the ineffective assistance of trial counsel. The State responds that defendant has misstated the stage of review of defendant's successive postconviction petition. The State maintains that the trial court's order did not dismiss defendant's postconviction petition at the first stage of review, but instead the trial court denied defendant leave to file her successive postconviction petition. We agree with the State. The trial court's written order held that defendant "failed to satisfy the cause and prejudice test as required by 725 ILCS 5/122-1(f). Accordingly, leave to file the instant petition is hereby denied." Therefore, the question on appeal is whether the trial court erred when it denied defendant leave to file her successive postconviction petition.

The Post-Conviction Act (725 ILCS 5/122-1 *et seq.* (West 2006)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2006); People v. Coleman, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations which occurred at the original trial. Coleman, 183 Ill. 2d at 380.

However, section 122-1(f) of the Post-Conviction Act provides, in relevant part:

> "Only one petition may be filed by a petitioner under this
> Article without leave of the court. Leave of court may be granted
> only if a petitioner demonstrates cause for his or her failure to
> bring the claim in his or her initial post-conviction proceedings and
> prejudice results from that failure." 725 ILCS 5/122-1(f) (West

2006).

The State contends that based on the supreme court's decision in People v. LaPointe, 227 Ill. 2d 39 (2007), and related appellate opinions, we need not consider defendant's claims. In LaPointe, the clerk of the circuit court file stamped the defendant's successive postconviction petition on January 28, 2004. Later, on April 2, 2004, the defendant filed a motion for leave to file his successive postconviction petition. On April 28, 2004, the trial court denied the defendant leave to file his successive postconviction petition. On appeal, the defendant argued that because the trial court did not enter its order denying leave to file the petition within 90 days of its filing, his petition should have advanced to the second stage of postconviction proceedings. LaPointe, 227 Ill. 2d at 42-43. The supreme court held that because section 122-1(f) "expressly conditions leave to file on the petitioner's satisfaction of the cause-and-prejudice test, a second or successive petition cannot be considered filed despite its having been previously accepted by the clerk's office." LaPointe, 227 Ill. 2d at 44. Therefore, the court found that when the trial court denied the defendant leave to file his petition, the defendant's "case ended at that point without his second petition having ever been properly filed under the statute." LaPointe, 227 Ill. 2d at 44.

Similarly, in People v. DeBerry, 372 Ill. App. 3d 1056, 1060 (2007), the Fourth District reviewed a defendant's appeal from the dismissal of his successive postconviction petition. The defendant never sought leave to file his successive postconviction petition and the trial court dismissed it on the State's motion. The reviewing court affirmed the dismissal, but it did so because the defendant failed to comply with section 122-1(f) by seeking leave to file his

9

successive postconviction petition. The court held that section 122-1(f) acts as "a procedural hurdle" to any consideration of the claims in the postconviction petition and that a violation of the statute "trumps anything that defendant's petition may contain." DeBerry, 372 Ill. App. 3d at 1060: See also People v. Daniel, 379 Ill. App. 3d 748 (2008); People v. Spivey, 377 Ill. App. 3d 146 (2007); People v. Shipp, 375 Ill. App. 3d 829 (2007).

However, this case presents a different procedural posture than the above cases. Here, defendant originally filed the instant petition as a section 2-1401 petition, even though the substance of her petition set forth an alleged deprivation of her constitutional rights due to ineffective assistance of counsel. The trial court summarily dismissed her petition as frivolous and patently without merit without informing defendant that the petition was being considered as a postconviction petition. This court, pursuant to People v. Pearson, 216 Ill. 2d 58 (2005), and People v. Shellstrom, 216 Ill. 2d 45 (2005), reversed that dismissal and remanded the case to the trial court to inform defendant of the trial court's intention to consider the filing as a postconviction petition and to give her the option of withdrawing or amending her petition. While defendant did not seek specific leave to file her petition, we hold that the trial court's written order after remand implicitly acknowledged a request for leave and thus followed the requirements of section 122-1(f) before denying defendant leave to file for failing to satisfy the cause and prejudice test. Based on the unique procedural circumstances of this case, we find that there was no violation of section 122-1(f) and that defendant is entitled to a review of the trial court's order denying her leave to file a successive postconviction petition.

We review a dismissal of a postconviction petition without an evidentiary hearing before

the trial court *de novo*. People v. Coleman, 183 Ill. 2d 366, 389 (1998).

Under section 122-1(f), a defendant must satisfy the cause and prejudice test in order to be granted leave to file a successive postconviction petition. 725 ILCS 5/122-1(f) (West 2006).

> "For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2006).

Both elements of the cause and prejudice test must be satisfied to prevail. People v. Pitsonbarger, 205 Ill. 2d 444, 464 (2002). "In the context of a successive post-conviction petition, however, the procedural bar of waiver is not merely a principle of judicial administration; it is an express requirement of the statute." Pitsonbarger, 205 Ill. 2d at 458, citing 725 ILCS 5/122-3 (West 1996).

Defendant does not argue that she has satisfied the cause and prejudice test. Rather, defendant relies on the decision in Pitsonbarger to assert that her claim of actual innocence will excuse her failure to raise the issue in a previous petition in order to prevent a miscarriage of justice. In outlining the application of the cause and prejudice test, the supreme court "reaffirm[ed] that even if the petitioner cannot show cause and prejudice, his failure to raise a claim in an earlier petition will be excused if necessary to prevent a fundamental miscarriage of

justice. To demonstrate such a miscarriage of justice, a petitioner must show actual innocence." Pitsonbarger, 205 Ill. 2d at 459. Defendant contends that she has shown actual innocence because if her trial attorney had investigated her history of abuse and her fear of Riley, then the affirmative defense of compulsion would have exculpated her from the home invasion charge underlying the felony murder. Further, defendant asserts that "[a]s in a traditional newly discovered evidence case, the failure to present this evidence to the trial court was in no way the fault of Smith."

It is well established that a voluntary guilty pleas waives all non-jurisdictional errors or irregularities, including constitutional errors. People v. Townsell, 209 Ill. 2d 543, 545 (2004). "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann. " Tollett v. Henderson, 411 U.S. 258, 267, 36 L. Ed. 2d 235, 243, 93 S. Ct. 1602, 1608 (1973), citing McMann v. Richardson, 397 U.S. 759, 25 L. Ed. 2d 763, 90 S. Ct. 1441 (1970) (defendant must show that advice was not "within the range of competence demanded of attorneys in criminal cases").

We point out that defendant does not attack her guilty plea as being either involuntary or unknowing. Rather, she asserts that she is actually innocent and her trial counsel was ineffective

1-06-3384

for failing to investigate and present a defense of compulsion. All the errors that defendant contends her trial counsel committed relate to claims she voluntarily relinquished when she pled guilty, and we will not consider her attorney's alleged deficient performance on issues that defendant waived.

Moreover, defendant's argument fails for three additional reasons: (1) defendant previously has raised the issue of ineffective assistance of counsel in that he failed to investigate her abusive childhood and her abusive relationship with and fear of Riley at trial and in a letter attached to her initial postconviction petition, (2) at all times, this evidence was known to defendant, and (3) the record belies defendant's claims of ineffective assistance. To win relief under the theory of actual innocence, the evidence presented by the defendant must be "newly discovered." People v. Morgan, 212 Ill. 2d 148, 154 (2004). "That means it must be evidence that was not available at defendant's original trial and that the defendant could not have discovered sooner through diligence. The evidence must also be material and noncumulative. In addition, it must be of such conclusive character that it would probably change the result on retrial." Morgan, 212 Ill. 2d at 154.

First, we turn to the circumstances in which defendant's history of abuse was previously raised before the trial court. At sentencing, defendant's attorney argued in mitigation:

> "As was explained to your Honor in the conference, Miss
>
> Smith has no criminal convictions. She's never been convicted of a
>
> crime as an adult in the State of Illinois.
>
> At the age of seven, she was sexually abused, sexually

13

molested by her mother's boyfriend.

At the age of 13, she had a juvenile [adjudication where she did three years] in the juvenile home. Upon her release, her mother threw her out of the house and basically she's been in group homes and a ward of the [S]tate and basically being bounced from home to home in her youth by the Department of Children and Family Services."

Before imposing the sentence, the trial court discussed the factors in aggravation and mitigation. The court noted the horrific and senseless nature of Happ's murder as well as defendant's lack of a criminal record. The court also stated:

"This defendant is accountable for the murder, not the actual person who performed the acts, and it is at least arguable from the evidence that you, Miss Smith, had no intention for this to happen, and you were at least surprised as anyone else that it did. I'm going to give you the benefit of the doubt on that because I don't have any evidence to the contrary that I can rely on sufficiently for another position.

There are mitigating factors in your background, that you've had a difficult life, including the — virtually no home at all, including being the victim of sexual abuse and it's not altogether surprising that we find ourselves in this situation given what your

14

background is, and I consider that in mitigation."

While these statements by the defense attorney and the trial court did not discuss defendant's claims of abuse by Riley, it is clear that at least part of defendant's claims of sexual abuse and her wardship of the State were presented to the trial court by defendant's attorney during defendant's guilty plea proceedings, in contradiction to her current ineffective assistance claims.

Moreover, the reason defendant cannot satisfy the "cause" prong of the test is because she previously attempted to raise her claim of ineffective assistance of counsel during her first postconviction proceedings. Defendant's initial postconviction petition raised an <u>Apprendi</u> violation, but a letter written by defendant raising the claim of ineffective assistance of counsel was appended to and file-stamped with the same date as her postconviction petition. Both parties incorrectly assert that this letter is not contained in the record on appeal.

This letter, addressed to the clerk of the circuit court of Cook County, discussed the failure of her trial attorney to inform defendant about her case and to investigate her background as a ward of the State. Defendant wrote, "Do to my predictament the assistance of my counsel was very ineffective assistance. *** He was not very informative about my situation. Towards the day I went to court I was unaware that it was going to be my last court date. He did not represent me like I should have been." Defendant stated she was "confused and felt like my P.D. was not trying. I was afraid to change counsels because I was under the impressure it was to late."

In the letter, defendant said that her attorney failed to get in contact with anyone from the

Department of Children and Family Services. She also described her fear of Riley. Defendant "never made a police report because I feared if he found out he would hurt me badly or even kill me." Defendant wrote about the day of the home invasion and murder. She stated that she has "remorse for the young lady that was killed. I apologize for being there but either he was going to beat the hell out of me or kill me if I didn't go with him."

In its written order dismissing defendant's postconviction petition, the trial court discussed defendant's letter attached to the petition. The court noted that the letter purported to raise the claim of ineffective assistance of counsel that was not presented in her petition. The court also found that the record belied her claim because defendant stated in open court at her plea hearing that she had discussed her case with her attorney, was satisfied with his representation, and was not induced to plead guilty by threats, force or promises.

The record establishes that defendant knew about her potential claim of ineffective assistance of counsel but failed to properly present it in her initial postconviction proceedings. Her successive postconviction petition is simply an attempt to relitigate those claims. Contrary to defendant's argument, it is not her attorney's failure to discover this new evidence through diligence that is relevant at this stage. As previously stated, to succeed under a theory of actual innocence, the new evidence could not have been discoverable by defendant sooner through diligence. Morgan, 212 Ill. 2d at 154. That is not the case here. The record demonstrates that defendant knew about her claims of ineffective assistance of counsel based on the failure to present evidence of her history and Riley's abuse at the time of her initial postconviction petition, at the latest.

16

Further, even if defendant's claims of ineffective assistance were preserved, the record on appeal belies defendant's allegations. Our detailed account of defendant's plea hearing shows that the trial court thoroughly questioned defendant about her desire to plead guilty and the rights she would be giving up in doing so. The court specifically asked defendant if she was satisfied with her counsel's representation and she stated that she was. Defendant made no indication that her decision to plead guilty was anything other than hers, despite numerous opportunities to state otherwise. Also, as we discussed above, defendant's attorney knew about defendant's abuse history and argued it in mitigation before the trial court. Illinois courts "have consistently upheld the dismissal of a post-conviction petition when the record from the original trial proceedings contradicts the defendant's allegations." People v. Rogers, 197 Ill. 2d 216, 222 (2001), citing Coleman, 183 Ill. 2d at 382, and People v. Jones, 66 Ill. 2d 152, 157 (1977).

Since defendant previously attempted to raise the instant claims of ineffective assistance of counsel and the record belies these allegations, she cannot advance a theory of actual innocence based on newly discovered evidence nor can she satisfy the "cause" prong of the "cause and prejudice" test. Accordingly, the trial court properly denied defendant leave to file her successive postconviction petition.

Defendant next argues that the trial court's improper reliance on the State's input at the first stage of her postconviction proceedings requires a reversal of the dismissal of her postconviction petition and a remand for further proceedings. The State responds that the rules restricting input from the State during the first stage of postconviction proceedings is inapplicable because those restrictions do not apply until a defendant is granted leave to file a

successive postconviction petition.  We agree with the State.

As we previously discussed, the trial court denied leave to file defendant's successive postconviction petition under section 122-1(f) (725 ILCS 5/122-1(f) (West 2006)).  Therefore, defendant's petition never reached first-stage consideration by the trial court.  The guidelines of section 122-2.1(a), which requires the trial court to independently  review the postconviction petition within 90 days of its filing and to determine whether "the petition is frivolous or is patently without merit," (725 ILCS 5/122-2.1(a)(2) (West 2006)), do not apply in the instance of a successive postconviction petition until the trial court expressly grants the defendant leave to file.  See LaPointe, 227 Ill. 2d at 43 (noting that "the Act treats successive petitions differently than initial petitions" and rejecting the defendant's argument that the trial court had to docket his successive postconviction petition because it failed to dismiss it within 90 days).

Even if the State were not permitted to participate in the proceedings prior to the granting of leave to file, the record shows that the State's input was incidental and collateral to the trial court's decision to deny defendant leave to file her postconviction petition.

At the first status call on defendant's case following remand from her prior appeal, the trial court discussed on the record its decision on how to proceed with defendant's *pro se* filing, which was originally characterized as a section 2-1401 petition.  The ASA in the courtroom indicated that he had read the remand, but it was not his case.  The ASA noted that if defendant wished to recharacterize the filing as a postconviction petition, then it would be a successive petition.  The court also discussed whether to order the defendant to be in court at the next status hearing or if a letter explaining the remand would be sufficient.  The trial court decided to bring

18

in the defendant for the next status hearing to discuss her intentions. At that hearing, defendant appeared without an attorney and a different ASA was present in the courtroom. The trial court explained defendant's options regarding her *pro se* filing and defendant said she wished to have it considered as a postconviction petition and she had an amended petition with her that she gave to the court and the ASA. The ASA spoke nine words during that hearing, which amounted to a clarification on the charge to which defendant had pled guilty and asking what the next status date would be.

There is nothing in the record to show that the State discussed with or influenced the trial court in its decision to deny defendant leave to file her petition. The merits of the petition or reasons why it failed to satisfy the cause and prejudice test under section 122-1(f) were never discussed. The colloquy between the ASA and the trial court at the first status hearing related only to the procedural posture of the case and the proper way to proceed on remand. At the second status hearing, the trial court spoke with defendant and the ASA offered only inconsequential comments. Nothing in the record demonstrates that the State influenced or affected the trial court's ruling on defendant's postconviction petition.

Our conclusion that the proceedings were proper is supported by the supreme court's decision in People v. Gaultney, 174 Ill. 2d 410 (1996). In Gaultney, the State filed a premature motion to dismiss the defendant's postconviction petition during the first stage of postconviction proceedings. The defendant contended that the State's motion influenced the trial court and tainted its findings. The supreme court held that "[w]here the record gives no indication that the trial judge sought input from the State or relied on the motion to dismiss, we presume that the

judge acted properly." Gaultney, 174 Ill. 2d at 420. Accordingly, since the record in the instant case does not show that the State offered any input as to the merits of defendant's petition and the trial court's decision to deny leave to file, there was no error.

Next, defendant contends that the trial court erroneously assessed her a $90 filing fee and $50 State's Attorney fee. We will consider the assessment of each fee separately.

Following its denial of leave to file the petition, the trial court assessed defendant court costs and fees under section 22-105 of the Code of Civil Procedure (Code) (735 ILCS 5/22-105 (West 2006)), including a $90 filing fee pursuant to section 27.2a[1] of the Illinois Clerks of Courts Act (705 ILCS 105/27.2a (West 2006)). Defendant argues that she is not subject to the filing fee for two reasons: (1) she was denied leave to file her successive postconviction petition, and (2) there is no statutory filing fee for postconviction petitions because section 22-105 does not "specify the cost of filing a post-conviction petition, nor does that section cross-reference any other statutory section where such information can be found." Defendant also argues that the fees and costs assessed must be vacated because section 22-105 violates her state and federal constitutional rights to due process and equal protection under the law.

Section 22-105(a) provides, in relevant part:

> "If a prisoner confined in an Illinois Department of
>
> Corrections facility files a pleading, motion, or other filing which

---

[1] Although the trial court's written order cited to "705 ILCS 5/27.2(a)", defendant has admitted in her opening brief that this was a typographical error and the trial court intended to cite "705 ILCS 5/27.2a", which is the applicable statute for fees in counties with population over 3 million.

purports to be a legal document in a case seeking post-conviction relief under Article 122 of the Code of Criminal Procedure of 1963 *** or in another action against the State, the Illinois Department of Corrections, or the Prisoner Review Board, or against any of their officers or employees and the Court makes a specific finding that the pleading, motion, or other filing which purports to be a legal document filed by the prisoner is frivolous, the prisoner is responsible for the full payment of filing fees and actual court costs." 735 ILCS 5/22-105(a) (West 2006).

Section 22-105(b) provides five definitions for "frivolous" under this section, and the trial court relied on two of these in assessing the fee: it lacked an arguable basis either in law or in fact and the claims, defenses, and other legal contentions therein are not warranted by existing law. 735 ILCS 5/22-105(b)(1), (b)(3) (West 2006).

In conjunction with section 22-105:

"section 27.2a of the Illinois Clerks of Courts Act, which deals with circuit court fees in counties of 3 million or more, states that a minimum fee of $75 and a maximum fee of $90 is to be charged to those who file

'[p]etition[s] to vacate or modify any final judgement or order of court, except a petition to modify, terminate, or enforce a judgment or order

21

1-06-3384

for child or spousal support or to modify, suspend,

or terminate an order for withholding, if filed later

than 30 days after the entry of the judgment or

order.' 705 ILCS 105/27.2a(g)(2) (West 2004)."

People v. Gale, 376 Ill. App. 3d 344, 356 (2007).

"The cardinal rule of statutory construction is to ascertain and give effect to the intent of

the legislature." In re Donald A.G., 221 Ill. 2d 234, 246 (2006). "The best evidence of

legislative intent is the language of the statute, and when possible, the court should interpret the

language of a statute according to its plain and ordinary meaning." In re Donald A.G., 221 Ill. 2d

at 246.

Defendant's first contention that the filing fee was unauthorized is that her successive

postconviction petition was never filed and, therefore, she cannot be assessed a filing fee.

Defendant equates filing procedures for successive postconviction petitions under the Post-

Conviction Act with the meaning of "filing" contemplated in section 22-105(a).

We have acknowledged that the procedural history in this case presents a slightly unusual

situation. Generally, as mandated by section 122-1(f) of the Post-Conviction Act, a defendant

must seek explicit leave to file a successive postconviction petition before the actual petition is

considered. Presumably, a defendant would accomplish this requirement by filing a motion

requesting leave to file the petition. Such motion would clearly qualify as a motion seeking

postconviction relief, as indicated by section 22-105(a). See 735 ILCS 5/22-105(a) (West 2006).

We have also indicated that under the particular circumstances of this case defendant met

22

the procedural hurdle under section 122-1(f). That filing sought postconviction relief and the defendant submitted an amended petition on remand. Section 22-105(a) applies to "a pleading, motion, or other filing that purports to be a legal document in a case seeking postconviction relief." 735 ILCS 5/22-105(a) (West 2006). While not the proper method of seeking leave to file a successive petition, defendant here submitted a filing for postconviction review, which the trial court eventually denied leave to file. Further, the statutory language of what type of filings can be assessed the filing fee if found to be frivolous is very broad. We find that this language shows the legislature's intention to include all types of *pro se* filings by prisoners seeking postconviction relief, which is what occurred in this case.

As to defendant's remaining claims relating to the $90 filing fee, similar arguments to those of defendant were considered and rejected in Gale, People v. Hunter, 376 Ill. App. 3d 639 (2007), and People v. Carter, 377 Ill. App. 3d 91 (2007).

In considering the argument that section 22-105(a) did not explicitly reference postconviction petitions, the reviewing court in Gale held and the Carter court adopted the following analysis:

"While section 22-105(a) may not refer in exact words to prisoners filing 'postconviction petitions,' it unmistakably states that a fee will apply to a prisoner's pleading, motion or other filing 'seeking post-conviction relief under Article 122 of the Code of Criminal Procedure.' 735 ILCS 5/22- 105(a) (West 2004). That the fee will apply to postconviction petitions, then, cannot be any clearer, as

1-06-3384

these petitions are 'seeking post-conviction relief' and are brought under our Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2004)). Such a finding is in line with section 21 of our Court of Claims Act *** specifically authorizing our trial courts to impose fees when a prisoner's petition is found to be frivolous. See 705 ILCS 505/21 (West 2004)." Gale, 376 Ill. App. 3d at 356-57:

See also Carter, 377 Ill. App. 3d at 96.

The court in Hunter rejected the defendant's contention that the filing fee is not statutorily authorized because section 22-105 does not "cross-reference any other statutory provision providing such information." Hunter, 376 Ill. App. 3d at 645.

"We acknowledge that section 22-105 of the Code does not reference or cross-reference a statute specifically providing the cost of filing a postconviction petition. It appears that this is because there is no initial filing fee for a postconviction petition. Section 22-105 assesses fees only after a legal document in a postconviction proceeding is found to be frivolous. Once a court has made that determination, it must look elsewhere in determining the costs to be assessed the prisoner, depending on the type of legal document filed. When possible, this court should construe a statute so that it is not rendered meaningless. See People v. Maggette, 195 Ill. 2d 336, 350 (2001). Therefore, contrary to

24

1-06-3384

> defendant's argument, the lack of specific fee amounts or cross-references to specific fee statutes in section 22-105 does not render the section meaningless or invalid." Hunter, 376 Ill. App. 3d at 645-46:

See also Carter, 377 Ill. App. 3d at 96-97.

Further, the Hunter court applied the doctrine of *in pari materia*, that two statutes dealing with the same subject will be considered with reference to one another in order to give them harmonious effect. Hunter, 376 Ill. App. 3d at 646, citing People v. McCarty, 223 Ill. 2d 109, 133 (2006).

> "Section 22-105 of the Code authorizes the assessment of filing fees and costs for a frivolous postconviction pleading. The circuit court, in exercising that authority and in following the doctrine of *in pari materia*, went to section 27.2a of the Clerks Act, the circuit court's filing fees statute, to determine the fee to be assessed.
>
> Section 27.2a(g)(2) of the Clerks Act applies to petitions seeking to modify or vacate a final judgment. A postconviction petition seeks to modify or vacate a final judgment in the sense that it inquires into issues that relate to and affect a sentence or conviction of a final judgment that were not, or could not have been, determined on direct appeal. See People v. Barrow, 195 Ill. 2d 506, 519 (2001). Accordingly, under the authorization of

25

section 22-105 of the Code, the circuit court properly subjected

defendant's petition to the fees outlined under section 27.2a(g)(2)

of the Clerks Act." Hunter, 376 Ill. App. 3d at 646.

We agree with the analysis in Gale, Hunter, and Carter and adopt their conclusions in the instant case. Since section 22-105, read *in pari materia* with section 27.2a(g)(2), allows for the imposition of filing fees for postconviction petitions, the trial court properly assessed the $90 filing fee once it found defendant's filing to be frivolous.

Defendant also asserts that even if the assessment of the fee was proper, the court's order that the Illinois Department of Corrections (IDOC) dock her account for the fee was error because section 22-105(a) only permits the court to order IDOC to collect court costs from a prisoner's trust account. Defendant's argument is premised on the following language from section 22-105(a):

"[T]he prisoner is responsible for the full payment of *filing fees and actual court costs*.

On filing the action or proceeding the court shall assess and, when funds exist, collect as a partial payment of *any court costs* required by law a first time payment of 50% of the average monthly balance of the prisoner's trust fund account for the past 6 months." (Emphasis added.) 735 ILCS 5/22-105(a) (West 2006).

Defendant argues that because the legislature referred to "filing fees and actual court costs" when it made the prisoner responsible for payment but did not specifically refer to filing

fees when it allowed for the collection of "any court costs" from the prisoner's trust account,this demonstrates legislative intent to limit the collection to only court costs. However, as defendant admits, the supreme court has agreed with the characterization by Illinois courts that " '[a] "cost" is a charge or fee taxed by a court such as a filing fee, jury fee, courthouse fee, or reporter fee.' " People v. Jones, 223 Ill. 2d 569, 581-82 (2006), quoting People v. White, 333 Ill. App. 3d 777, 781 (2002). We disagree with defendant and find that the legislature's use of the broad phrase "any court costs" in delineating a means of collection was meant to include the assessed "filing fees and actual court costs."

Defendant next contends that even if the filing fee was statutorily authorized, the fee violates her constitutional rights because it unfairly subjects indigent prisoners to pecuniary punishment for attempting to exercise a state-granted postconviction remedy in violation of her due process rights and it violates equal protection by targeting prisoners to the exclusion of other indigent petitioners. This question was also considered by the courts in Gale, Hunter, and Carter and was uniformly rejected in each case.

Statutes are presumed constitutional, and we must construe statutes so as to uphold their constitutionality if there is any reasonable way to do so. Jones, 223 Ill. 2d at 595-96. "The party challenging the validity of a statute has the burden of clearly establishing a constitutional violation." Jones, 223 Ill. 2d at 596. We review the constitutionality of a statute *de novo*. Jones, 223 Ill. 2d at 596.

In her due process argument, defendant, relying on Smith v. Bennett, 365 U.S. 708, 709, 6 L. Ed. 2d 39, 40, 81 S. Ct. 895, 896 (1961), asserts that "the legislature has erected a financial

hurdle to a state-granted post-conviction remedy that uniquely and unfairly impacts its exercise by indigents." As to this argument, the Hunter court found that "no financial consideration is 'interposed' denying a prisoner's access to the courts. Defendant fails to recognize that section 22-105 assesses court costs and filing fees after a filed legal document is found to be frivolous, but not before the actual filing. Because no financial consideration is 'interposed' between a prisoner and his access to the courts, his due process argument under Smith must fail." Hunter, 376 Ill. App. 3d at 646-47. Likewise, the Gale court held that "section 22-105 does not present a 'financial hurdle' unfairly impacting indigent petitioners. Rather, it simply charges fees and costs to the prison trust fund accounts of all prisoners regardless of financial status and only if these funds exist, but ultimately never prohibits them from exercising their postconviction relief rights. There is more than a conceivable basis for finding that these provisions are rationally related to our state's interest in maintaining the efficiency and administration of our legal system and, thus, we hold that section 22-105 does not violate due process." Gale, 376 Ill. App. 3d at 361; see also Carter, 377 Ill. App. 3d at 100-02.

Additionally, defendant argues that section 22-105 burdens indigent prisoners who bring claims in good faith but lack either the intelligence or ability to properly draft a postconviction petition to present a nonfrivolous claim. In addressing this contention in light of the frivolous filing of a successive postconviction petition, the court in Carter acknowledged:

"imposition of a fee for an inarticulate claim which was, however, not frivolous would in fact violate the right of meaningful access to the court. However, in the instant case, the

28

fee was imposed for frivolous claims brought in the context of a successive postconviction petition. Pursuant to the 'cause and prejudice' test, the defendant must show 'cause' for failing to raise the issue in a prior proceeding and actual 'prejudice' resulting from the claimed error. [Citations.] *** We are mindful that a defendant who fails to include an issue in his original or amended postconviction petition may raise the issue in a successive petition if he satisfies the requirements of the 'cause and prejudice' test with respect to each claim presented. [Citation.] However, in the instant case, not only were the allegations in defendant's petition either waived or *res judicata*, defendant made no attempt to recognize, address or satisfy the 'cause and prejudice' test, which is a prerequisite for successive postconviction relief. [Citation.]"

Carter, 377 Ill. App. 3d at 102-03.

Similarly, in the present case, we have already held that defendant's claim of ineffective assistance of counsel failed to satisfy the "cause and prejudice" test because she had already raised these claims in a letter attached to initial postconviction petition. Further, as the Carter court noted, "defendant had his opportunity for trial, for appeal, for filing his initial postconviction petition, for appeal of the dismissal of that petition, for filing a successive postconviction petition and for appeal of the dismissal of that successive petition. The record reflects defendant had

29

more than an adequate opportunity to be heard at a meaningful time and in a meaningful manner. In no way did the assessment of the $90 fee curtail or limit his opportunity to be heard at a meaningful time and in a meaningful manner. Defendant has not demonstrated what more process is 'due.' " Carter, 377 Ill. App. 3d at 104. Here, defendant chose to plead guilty and waive her right to a trial, did not move to withdraw her guilty plea or file a direct appeal, filed an initial postconviction petition, filed an appeal of the dismissal, filed a pleading titled as a section 2-1401 petition, filed an appeal of its summary dismissal, had her pleading recharacterized as a successive postconviction petition, and filed the instant appeal from the denial of leave to file that successive petition. Defendant has not been denied due process nor had her access to the courts limited in any way. Based on the above discussion and the decisions in Gale, Hunter, and Carter, we find no violation of defendant's due process rights.

We turn to defendant's equal protection argument that section 22-105 unfairly targets prisoners to the exclusion of other indigent petitioners. In Gale, the reviewing court opined that

"while postconviction relief does not belong exclusively to

prisoners, our very experience has demonstrated to us that it is,

overwhelmingly, prisoners who are filing postconviction petitions

rather than any other category of people. It stands to reason, then,

that the incidence of frivolous petitions is considerably higher

among prisoners, as they are more likely to file petitions as a

whole. This, coupled with the legislature's concern with the sheer

number of petitions that may be filed under the various statutory

30

> provisions allowing for postconviction relief as we discussed
>
> earlier, clearly presents a more than reasonable basis for
>
> distinguishing between prisoners, to which section 22-105 applies,
>
> and others seeking similar relief such as probationers and releasees,
>
> to which it does not." Gale, 376 Ill. App. 3d at 362.

Moreover, "a prisoner is free to file whatever legal documents he wishes to without being assessed an initial filing fee. Section 22-105 assesses filing fees and costs if the documents being filed are later found to be frivolous. Therefore, we find that the assessments bear a rational relationship to the State's legitimate interest in discouraging frivolous claims and compensating the courts for the expenses of processing and disposing of such claims." Hunter, 376 Ill. App. 3d at 648; see also Carter, 377 Ill. App. 3d at 105-06. Again, we agree with the conclusion reached in Gale, Hunter, and Carter and see no reason to alter our position as fully and ably expressed in those cases.

Next, defendant challenges the imposition of the $50 State's Attorney fee because the relevant statute does not allow for the assessment of this fee for postconviction petitions. The State maintains that the assessment of the fee was proper.

Section 4-2002.1(a) of the Counties Code, entitled "State's attorney fees in counties of 3,000,000 or more population," provides:

> "(a) State's attorneys shall be entitled to the following fees:
>
> * * *
>
> For each day actually employed in the hearing of a case of

31

1-06-3384

habeas corpus in which the people are interested, $50." 55 ILCS

5/4-2002.1(a) (West 2006).

Defendant contends that *habeas corpus* and postconviction proceedings are different types of collateral remedies and, therefore, the statute should only be held to apply to *habeas corpus* case. However, we need not determine whether the statutory language applies to postconviction proceedings. Here, no hearing was conducted on defendant's postconviction petition. The case appeared before the trial court on remand from this court on two occasions. The first time the trial court discussed how to proceed with an ASA that was not assigned to the case and happened to be in the courtroom. That ASA did not prepare anything on this case, but simply spoke with the court for a few minutes. The second time was when defendant had been brought into court to indicate her desire to recharacterize her section 2-1401 petition as a postconviction petition. Again, an ASA was present in the courtroom, but only said nine words during the time this case was before the trial court. As previously discussed, neither of the ASAs discussed the merits of the postconviction petition nor did they prepare any motions or response to the petition. Each of them just happened to be present when the case was called. We do not believe that mere presence in the courtroom is sufficient to warrant the assessment of the $50 fee against defendant, especially in this case when the actions were in response to this court's remand for further proceedings.

Based on the foregoing reasons, we affirm the circuit court's denial of leave to file defendant's successive postconviction petition and the imposition of the $90 filing fee and vacate the assessment of the $50 State's Attorney fee.

32

1-06-3384

Affirmed in part and vacated in part.

J. GORDON and O'MALLEY, JJ., concur.