2023 IL App (1st) 221752-U

No. 1-22-1752

Order filed December 29, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 CR 15898 |
| | ) | |
| OSTRANDA BROOKS, | ) | The Honorable |
| | ) | Neera Lall Walsh, |
| Petitioner-Appellant. | ) | Judge, Presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Tailor concurred in the judgment.

**ORDER**

*Held*: We affirm the circuit court's summary dismissal at the first stage of post-conviction proceedings where the petition failed to state the gist of a claim necessary to advance to second stage of post-conviction proceedings.

¶ 1    This appeal derives from the circuit court summary dismissal of Petitioner Ostranda Brooks' petition at the first stage of post-conviction proceedings. Brooks argues that the summary dismissal was error because the petition stated the gist of a claim that his guilty plea was

involuntarily due to the "coercive effect" of (1) counsel's ineffective assistance and (2) the circuit court's questioning during the hearing on Brooks' request to proceed *pro se*. For the following reasons, we affirm the circuit court's judgment.

¶ 2                                            I. BACKGROUND

¶ 3       In a seven-count indictment, Brooks was charged with first-degree murder, aggravated discharge of a firearm, aggravated domestic battery, unlawful use of a weapon by a felon, and aggravated unlawful use of a weapon. Under a fully negotiated plea agreement, Brooks pled guilty to the offenses of aggravated discharge of a firearm and aggravated domestic battery in exchange for two concurrent terms of seven years' imprisonment and dismissal of the remaining charges. The circuit court accepted Brooks' guilty plea and sentenced him pursuant to the plea agreement. Seven months later, Brooks filed a *pro se* post-conviction petition. The court summarily dismissed the petition at the first stage of post-conviction proceedings. Brooks now appeals.

¶ 4                                   A. Pre-Plea Proceedings

¶ 5       On December 2, 2019, the circuit court appointed the public defender's office to represent Brooks. The parties tendered some discovery in February 2020, and the case was continued from March through July as a result of the COVID-19 pandemic. On August 28, 2020, Brooks and his counsel, Assistant Public Defender (APD) Amy Weisberg, appeared in court via Zoom. During the Zoom hearing, the parties discussed scheduling a 402 conference, Brooks conferred with Weisberg in a breakout room,[1] and the case was continued for further discovery. During a Zoom hearing on October 27, 2020, Brooks asked Weisberg if "there any chance I could talk to you

---

[1] "Breakout rooms are sessions that are split off from the main Zoom meeting. ***. In the courtroom setting, the breakout room can serve as a room where a party can confer with his or her attorney or a witness can wait to testify, without having access to the main meeting." *In re P.S.*, 2021 IL App (5th) 210027,¶ 45, n. 1.

about, like, this whole discovery? I haven't been able to reach you." Weisberg responded she would schedule a Zoom call to talk with Brooks.

¶ 6      During a Zoom hearing on December 16, 2020, Weisberg stated she received medical records from the State, would be filing an unspecified motion, and would be "setting it in the holding pattern for trial." By the next court hearing on February 16, 2021, APD William Woelkers was assigned to Brooks' case. Two days later, the State filed a motion to allow evidence of Brooks' other crimes. During a Zoom hearing on May 27, 2021, Woelkers stated he had visited Brooks at the jail and would be visiting again. He also stated that he was assessing whether to file a motion to suppress evidence. Brooks asked if he could get an earlier court date because he was ready to "get this thing moving." The court explained to Brooks that his counsel needed time to investigate and file documents and that there were many cases on the call due to COVID-19. At the end of the hearing, Brooks conferred with Woelkers in a breakout room. On July 16, 2021, Brooks informed the court that he was not "seeing eye to eye" and "having a problem" with his counsel. Because Woelkers was in another courtroom, the case was continued.

¶ 7      A few days later, Woelkers filed a response to the State's motion to allow evidence of other crimes. During a Zoom hearing a few months thereafter, Woelkers stated he intended to file a motion to suppress evidence but wanted to resolve the motion to allow evidence of other crimes because "that may have an effect on which direction we go from here." After the call, Brooks conferred with Woelkers in a breakout room. In December 2021, the parties informed the court that they were in plea negotiations, but an agreement depended on the court's ruling on the State's motion to allow evidence of other crimes. After a hearing, the court granted the State's request to introduce evidence of Brooks' other crimes at trial.

¶ 8      On February 18, 2022, Brooks filed a notice indicating he would be "going pro-per with an assistant to help [him]" and attached a "Motion to Dismiss with Prejudice for Ineffective Assistance of Counsel." The motion was stricken on the basis that Brooks' ineffective assistance claims were premature. The court then inquired into Brooks' request to proceed *pro se*. The court questioned Brooks about his background, experience, and knowledge of the legal system. The court advised that it will not explain anything that is unfamiliar to Brooks, and that the prosecutors have tried many cases, gone to law school, knew the Rules of Evidence, and may have an advantage over him. Once the trial began, Brooks could not change his mind and the court would not provide standby counsel. The court further explained that "[p]resenting a defense is not a simple matter of telling one's story but requires adherence to various technical rules." If Brooks was found guilty, he could not say he did not know what he was doing.

¶ 9      The court also explained Brooks would not receive any special consideration or extra time to use the library for being *pro se*. Brooks responded, "I don't feel comfortable with that then because I need extra time. I don't know how I am going to proceed with it if that's the case." Brooks then asked if he could get another attorney appointed to represent him, and the court stated that Brooks could hire a private attorney, but Woelkers would remain his court-appointed attorney. After further questioning, Brooks stated "I don't know about the whole situation because you are saying now that I can't get any extra time to the library which I need so I mean it's pretty much pointless at this point for me to do." The court asked Brooks if he decided whether he wanted to represent himself, and Brooks responded no.

¶ 10     Thereafter, Woelkers stated he informed Brooks of the State's plea offer of eight years in prison. Woelkers wanted to "make it clear for the record" that he "never tell[s] any client the

certainty of an outcome at trial." Woelkers also stated he advises clients based on his experience and the case evidence, his clients "are free to make any decision," and he informed Brooks of the charges and "ramifications of a guilty verdict." Woelkers then stated that Brooks was going to reject the State's eight-year sentence offer and he "would file a motion to suppress the gun today." The State clarified that its offer is a seven-year sentence in exchange for Brooks pleading guilty. The court passed the case to allow Brooks to discuss the seven-year sentence offer with his counsel.

¶ 11                             B. Guilty Plea Proceeding

¶ 12      When the case was recalled, Brooks informed the court that he wished to accept the State's offer. The court admonished Brooks of the charges, possible penalties, and the rights he was relinquishing by pleading guilty. Brooks stated that he had not received any threats or promises and was pleading guilty of his own free will. The court inquired about a factual basis for a guilty finding, and the parties stipulated to the following:

> "If the State were to proceed to trial [it would] present the testimony of Treasure Hilliard, ***, who would identify the defendant in open court and testify that on the date of October 24th, 2019 at approximately 1:00 p.m. Near the location of 2030 South State Street, Chicago, Cook County, Ms. Hilliard and the defendant were in a dating relationship. They have a child in common, and on that date and at that time that they got into a verbal argument that quickly escalated into a physical argument.
>
> During that argument the defendant grabbed Ms. Hilliard about the neck and squeezed affecting and impeding her normal breathing.

Once Ms. Hilliard was able to get some distance from the defendant, the argument continued at which time the defendant removed a black revolver from his pocket, pointed the revolver in the direction of Ms. Hilliard, and discharged one shot.

Ms. Hilliard was able to eventually leave the apartment and she contacted the police.

The defendant was later placed into custody without incident."

¶ 13 The court found the factual basis sufficient, found Brooks' guilty plea was made intelligently and voluntarily, and entered guilty findings on the offenses of aggravated discharge of a firearm and aggravated domestic battery. In accordance with the plea agreement, the court sentenced Brooks to two concurrent terms of seven years' imprisonment, and the State dismissed the remaining charges.

¶ 14                                C. Post-Conviction Proceeding

¶ 15 On October 5, 2022, Brooks filed a post-conviction petition. The petition alleged Weisberg "did nothing" and Brooks did not talk to counsel from March to October 2020. Furthermore, Woelkers did not (1) send an investigator to interview the victim, (2) request a "change in venue," and (3) look at video footage. Brooks requested to proceed *pro se* with assistance but the court "denied all of these requests because she felt I didn't know the law" and "insisted [Woelkers] be appointed my defender after I ask her not to." Brooks accepted the plea offer because he felt he had no other choice and did not have a fair chance to defend himself "because of Covid." Lastly, the petition alleged that Brooks' convictions violated the one-act, one-crime rule. The circuit court summarily dismissed the petition at the first stage of post-conviction proceedings, determining that it had "no basis" and "no affidavit." This appeal follows.

¶ 16                                    II. JURISDICTION

¶ 17    On October 19, 2022, the circuit court summarily dismissed Brooks' petition at the first stage of post-conviction proceedings. Brooks filed a notice of appeal on November 14, 2022. Therefore, we have jurisdiction over this appeal pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 651(a) (eff. July 1, 2017), which governs appeals in post-conviction proceedings.

¶ 18                                      III. ANALYSIS

¶ 19    On appeal, Brooks argues that the circuit court erred in summarily dismissing his petition at the first stage of post-conviction proceedings where the petition stated the gist of a claim that his plea was involuntarily due to the "coercive effect" of (1) counsel's ineffective assistance and (2) the circuit court's questioning during the hearing on Brooks' request to proceed *pro se*. The State argues that Brooks' guilty plea waives his claims. The State further asserts the circuit court's summary dismissal was warranted because Brooks failed to attach evidentiary affidavits to his petition in accordance with section 122-2 of the Post-Conviction Hearing Act (725 ILCS 5/122-2 (West 2022)) and the petition failed to state the gist of a claim that counsel's alleged ineffectiveness and the circuit court's questioning had a coercive effect on Brooks' decision to plead guilty.

¶ 20                                       A. Waiver

¶ 21    We begin by addressing the State's waiver argument. It is well established that "a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional errors." *People v. Townsell*, 209 Ill.2d 543, 545 (2004). " 'When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred

prior to the entry of the guilty plea.' " *People v. Smith*, 383 Ill. App. 3d 1078, 1085 (2008) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), citing *McMann v. Richardson*, 397 U.S. 759 (1970)).

¶ 22    There are exceptions to this waiver rule. For instance, the rule does not apply to claims of actual innocence (*People v. Reed*, 2020 IL 124940), claims that the defendant's plea was based on faulty admonishments (*People v. Kimmons*, 2022 IL App (2d) 180589, ¶ 38), and claims that " 'attack the voluntary and intelligent character of the guilty plea by showing that the advice [the defendant] received from counsel was not within the standards set forth in *McMann*.' " *Smith*, 383 Ill. App. 3d at 1085 (quoting *Tollett*, 411 U.S. at 267, citing *McMann*, 397 U.S. 759).

¶ 23    None of these exceptions are applicable here. Brooks does not argue a claim of actual innocence, that the court gave faulty admonishments, or that counsel's advice led him to involuntarily plead guilty. Instead, Brooks alleges that it was the "coercive environment"—*i.e.*, counsel's failure to provide effective assistance, the trial court's questioning after Brooks requested to proceed *pro se*, and that the State's offer was set to lapse—that influenced his guilty plea. However, "waiver and forfeiture are limitations on the parties and not on the court, and a court may overlook forfeiture where necessary to reach a just result or maintain a sound body of precedent." *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 94. As such, we will consider Brooks' post-conviction claims.

¶ 24                                        B. Post-Conviction Hearing Act

¶ 25    Brooks argues that the petition stated the gist of a claim necessary to advance to the second stage of post-conviction proceedings. Specifically, the petition alleged counsel rendered ineffective assistance by (1) failing to investigate the potential that Treasure Hilliard, the

complaining witness, fabricated her allegations against him; (2) failing to file a motion to review body camera footage and file a motion to suppress the gun evidence; (3) failing to file a motion for "change of venue" or substitution of judge; and (4) having little to no contact with Brooks. The petition further alleged that counsel's ineffectiveness was compounded by the trial court's questioning during the hearing on his request to proceed *pro se*, leading to a "coercive effect" that "rendered his plea involuntary."

¶ 26    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a mechanism by which a criminal defendant can assert that his conviction and sentence were the result of a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. The Act provides a three-stage process for adjudicating post-conviction petitions. *People v. English*, 2013 IL 112890, ¶ 23. At the first stage, a trial court considers whether the post-conviction petition is frivolous or patently without merit. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). The trial court reviews the petition on its own, without input from the parties. *Id.* The court may review the court file, the transcripts, and any appellate court actions. *Id.* The court treats the allegations of fact as true so long as those allegations are not positively rebutted by the record. *Id.* at 189.

¶ 27    Any petition deemed frivolous or patently without merit must be dismissed. 725 ILCS 5/122-2.1(a)(2) (West 2022). A petition is frivolous or patently without merit where it has no "arguable basis either in law or in fact" in that it is "based on an indisputably meritless legal theory" or "fanciful factual allegations." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). "An indisputably meritless legal theory is one which is completely contradicted by the record." *Id.* "Fanciful factual allegations include those which are fantastic or delusional." *Id.*

¶ 28     A *pro se* petitioner is not required to allege facts supporting all elements of a constitutional claim. *People v. Mars*, 2012 IL App (2d) 110695, ¶ 32. Because a *pro se* petitioner will likely be unaware of the precise legal basis for his claim, the threshold for survival is low, and a *pro se* petitioner need allege only enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Hodges*, 234 Ill. 2d at 9. However, the petition must " 'clearly set forth the respects in which the petitioner's constitutional rights were violated.' " *Id.* (quoting 725 ILCS 5/122-2 (West 2022)). We review *de novo* the dismissal of a post-conviction petition at the first stage. *Id.*

¶ 29     Brooks' ineffective assistance of appellate counsel claim is evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court *People v. Albanese*, 104 Ill. 2d 504 (1984). Under *Strickland*, defense counsel was ineffective if (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's error prejudiced the defendant. *Strickland*, 466 U.S. at 687. "We assess counsel's performance using an objective standard of competence under prevailing professional norms." *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010). We assess prejudice by determining whether petitioner showed a "reasonable probability that, absent counsel's errors, he would have pled not guilty and insisted on going to trial." *People v. Hatter*, 2021 IL 125981, ¶ 14. The petitioner must show that "he would have been better off going to trial because he would have been acquitted or had a viable defense." (Internal quotation marks omitted.) *Id.* ¶ 26. In the context of a first-stage post-conviction claim, a defendant need show only that he can arguably meet those two standards, *i.e.*, it is arguable that his counsel was deficient, and it is arguable that he was prejudiced by counsel's deficient performance. *Hodges*, 234 Ill. 2d at 17. "A defendant's failure to establish either prong of the

*Strickland* test precludes a finding of ineffective assistance of counsel." *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 30                    1. Failure to Investigate Potential Witness Fabrication

¶ 31    The petition alleged counsel was ineffective where Brooks "asked [his] new attorney *** to send an investigator to interview [his] victim because she was going to tell them she did all of this out of spite." We reject this argument for several reasons. First, Brooks failed to comply with the evidentiary requirements of section 122-2 when he did not attach an affidavit regarding Hilliard's recantation to the petition. Section 122-2 provides, "The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2022). "The requirement of an evidentiary affidavit or other evidence *** shows that the verified allegations are capable of objective or independent corroboration." *People v. Allen*, 2015 IL 113135, ¶ 26. Brooks failed to show that the allegations were "capable of objective or independent corroboration" by attaching an affidavit from Hilliard or explaining the reasons for its absence in the petition.

¶ 32    Moreover, the absence of Hilliard's affidavit hinders our review of the ineffective assistance claim. Our supreme court held, " '[a] claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness.' " *People v. Harris*, 224 Ill. 2d 115, 142 (2007) (*People v. Enis*, 194 Ill. 2d 361, 380 (2000)). The court explained that " '[i]n the absence of such affidavit, a reviewing court cannot determine whether the proposed witness could have provided testimony or information favorable to the defendant, and further review of the claim is unnecessary.' " *Id.* The lack of an affidavit precludes us from assessing the claim at issue.

¶ 33    Citing *People v. Allen*, 2015 IL 113135, Brooks argues that the allegations are supported by his sworn and notarized verification affidavit wherein he avers that all the allegations are true and correct. However, *Allen* is distinguishable from this case. In *Allen*, the court considered whether a petitioner's failure to notarize a corroborating document attached to the petition warranted summary dismissal. *Id.* ¶ 31. Adhering to the principle that courts consider the petition's substantive virtue rather than procedural compliance, the court found the lack of notarization did not "prevent the court from reviewing the petition's 'substantive virtue,' as to whether it 'set[s] forth a constitutional claim for relief.' " *Id.* ¶ 34. Unlike *Allen*, we are not concerned with the validity of an evidentiary affidavit attached to Brooks' petition. Rather, Brooks failed to attach an evidentiary affidavit to the petition altogether, preventing this court from meaningfully assessing whether Hilliard would provide information favorable to petitioner and whether counsel's failure to obtain the information demonstrates prejudice. See *Harris*, 224 Ill. 2d at 142. Our supreme court held "the failure to either attach the necessary 'affidavits, records, or other evidence' or explain their absence is 'fatal' to a post-conviction petition." *People v. Collins*, 202 Ill. 2d 59, 66 (2002). Therefore, we find the petition failed to state the gist of a claim that counsel was ineffective for failing to investigate the potential that Hilliard fabricated the allegations against Brooks.

¶ 34            2. Failure to Review Body Camera Footage and File a Motion to Suppress

¶ 35    The petition alleged counsel rendered ineffective assistance by failing to file a motion to review body camera footage and file a motion to suppress the gun evidence. These allegations fail to demonstrate Brooks was arguably prejudiced. Brooks failed to attach an evidentiary affidavit about the contents of the body camera footage pursuant to section 122-2. Without corroboration, any allegations that Brooks was prejudiced because counsel failed to file a motion to suppress

based on the evidence provided in the footage is speculative, and such "broad conclusory allegations are never enough even under the low threshold of the first stage." *People v. Roman*, 2016 IL App (1st) 141740, ¶ 13 (citing *People v. Delton*, 227 Ill. 2d 247, 258 (2008)).

¶ 36    Assuming the footage provides a basis for a motion to suppress, and the court granted the motion, the suppression of the gun would not lead to a more favorable result for Brooks. Because four of the seven counts associated with the gun were all dismissed under the plea agreement, the outcome is the same whether Brooks was acquitted of the four counts based on insufficient evidence or, as here, entered a plea agreement dismissing the four counts. Brooks would still stand trial on the remaining charges of aggravated discharge of a firearm, aggravated domestic violence, and possibly attempted first degree murder where he faced a 26-to-50-year sentence. See 720 ILCS 5/8-4(c)(1)(C) (West 2022) (attempt to commit first degree murder is a Class X felony with 20-year enhancement); 730 ILCS 5/5-4.5-25 (West 2022) (Class X felony sentencing range is 6 to 30 years). Notably, the suppression of the gun would not automatically result in acquittal of the aggravated discharge of a firearm and attempted first degree murder charges where the parties stipulated that Hilliard would testify that Brooks removed a black revolver from his pocket and discharged a shot. *People v. Sauls*, 2022 IL 127732, ¶ 52 ("The positive, credible testimony of a single witness, even if contradicted by the defendant, is sufficient to convict a defendant"). Additionally, the gun is irrelevant to the charge of aggravated domestic violence for strangulation. Faced with a significantly higher sentence, it is unlikely that Brooks would have chosen to proceed to trial under the circumstances. Thus, the petition failed to state the gist of a claim that counsel was ineffective for failing to review body camera footage and filing a motion to suppress.

¶ 37                      3. Failure to Seek "Change in Venue"

¶ 38    The petition alleged counsel rendered ineffective assistance by neglecting to file a motion for "change in venue" or substitution of judge because "Judge Walsh told me back in 2016 on a theft charge that I plead guilty to that if she sees me in her court room again 'I'm not going to like the results' which I felt she had it out for me." This claim fails to show counsel, particularly Woelkers, who is the counsel claimed to be ineffective in the petition, was arguably deficient in his performance. A request to substitute judge as a matter of right must be made within 10 days after the case is placed on the judge's trial call (724 ILCS 5/114-5(a) (West 2018)), and Woelkers did not appear until 14 months after the case was assigned to Judge Walsh. "Counsel cannot be considered ineffective for failing to make or pursue what would have been a meritless motion or objection." *People v. Rogers*, 2021 IL 126163, ¶ 32. Furthermore, as previously stated, Brooks failed to show that he was arguably prejudiced where it is unlikely Brooks would have chosen to proceed to trial given the circumstances. Thus, the petition fails to state the gist of a claim that counsel was ineffective for failing to file a motion for "change in venue" or substitution of judge.

¶ 39                    4. Counsel's Alleged Insufficient Effort and Communication

¶ 40    The petition alleged a claim of ineffective assistance because counsel gave "little to [no] effort" to "properly look into [his] case and to set it for trial" and communicate with Brooks from March to October 2020. The petition does not allege any facts delineating a different outcome had counsels put in more effort in their representation and, therefore, fails to establish arguable prejudice. See *People v. Valladares*, 2013 IL App (1st) 112010, ¶¶ 61-64 (finding petitioner's ineffective assistance claim failed because petitioner did not show how further communication would have changed the outcome). Significantly, the record shows counsel's communication was hindered by the COVID-19 pandemic. The court issued various administrative continuances due

to COVID from March to August 2020, and Brooks even admits that "COVID understandably inhibited counsel's ability to contact petitioner starting that March." Furthermore, the parties were still tendering discovery in October 2020, and counsel was not in a place to set the case for trial. Therefore, the petition fails to state the gist of a claim that counsel rendered ineffective assistance based on insufficient effort or communication.

¶ 41     5. Circuit Court's Questioning During The Hearing on Brooks' Request to Proceed *Pro Se*

¶ 42     Brooks argues that the circuit court coerced him by repeatedly telling him "how bad things would be for him if he did not continue working with an attorney that had done next to nothing for him in over a year and then how bad they would be if he did not accept the offer." We disagree with Brooks' argument because the petition's allegations surrounding the claim that the circuit court's questioning had a "coercive effect" on Brook's decision to plead guilty are rebutted by the record. Our assessment of the hearing reveals the court's admonishments aligned with the rule that a court must conduct "[a] careful inquiry *** to determine defendant's ability to conduct his own defense, focusing on age, level of education, mental capacity, and prior experience with the legal proceedings." This inquiry entails that a defendant "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing, and his choice is made with eyes open." (Internal quotation marks omitted.) *People v. Baez*, 241 Ill. 2d 44, 117 (2011). "The requirement of knowing and intelligent choice calls for nothing less than a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." (Internal quotation marks omitted.) *Id.*

¶ 43     Here, the circuit court properly informed Brooks of the disadvantages of proceeding *pro se*. The court questioned Brooks about his background, experience, and knowledge of the legal

system. The court stated that it will not explain anything that is unfamiliar to Brooks, and that the prosecutors have tried many cases, gone to law school, knew the Rules of Evidence, and may have an advantage over him. Once the trial began, Brooks could not change his mind and the court would not provide standby counsel. The court further explained that "[p]resenting a defense is not a simple matter of telling one's story but requires adherence to various technical rules." If Brooks was found guilty, he could not say he did not know what he was doing. The court also explained Brooks would not receive any special consideration or extra time to use the library for being *pro se* and, while Brooks could not seek another appointed attorney, he could hire a private attorney. We observe no coercion in the circuit court's inquiry. Therefore, the petition failed to state the gist of a claim that the circuit court's questioning contributed to the "coercive effect" leading to Brooks' involuntary plea.

¶ 44                                           IV. CONCLUSION

¶ 45     We find Smith's post-conviction petition failed to state the gist of a constitutional claim that his guilty plea was involuntarily due to the "coercive effect" of (1) counsel's ineffective assistance and (2) the circuit court's questioning during the hearing on Brooks' request to proceed *pro se*. Accordingly, we affirm the circuit court's summary dismissal of the petition at the first stage of post-conviction proceedings.

¶ 46     Affirmed.